# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

DAVID RENDER,                                   Case No. 1:10-cv-629
      Petitioner,

                                 Spiegel, J.

      vs                                       Bowman, M.J.

WARDEN, SOUTHERN OHIO                            **REPORT AND**
CORRECTIONAL FACILITY,[1]                        **RECOMMENDATION**
      Respondent.

Petitioner, who is currently incarcerated at the Southern Ohio Correctional Facility in

Lucasville, Ohio, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. §

2254.  This matter is before the Court on the petition, which the undersigned has allowed

petitioner to amend by separate Order issued this date (Docs. 5, 18); respondent's return of writ

with exhibits (Doc. 14); and petitioner's reply to the return of writ (Doc. 23).

## I. PROCEDURAL HISTORY

### State Trial Proceedings

On July 1, 2005, the Hamilton County, Ohio, grand jury returned a four-count indictment

charging petitioner with one count of resisting arrest in violation of Ohio Rev. Code §

2921.33(C)(2), two counts of having weapons while under disability in violation of Ohio Rev.

Code § 2923.13(A), and one count of carrying a concealed weapon in violation of Ohio Rev.

Code § 2923.12(A); firearm specifications were attached to the resisting-arrest and weapons-

under-disability charges.  (Doc. 14, Ex. 2).  In its direct appeal decision, the Ohio Court of

---

[1]When the instant action commenced, petitioner properly named the Warden of Lebanon Correctional
Institution (LeCI) as respondent, because petitioner was incarcerated at LeCI at that time.  Petitioner has informed
the Court of his changes in address, and most recently provided notice that he is residing at the Southern Ohio
Correctional Facility (SOCF) in Lucasville, Ohio.  (*See* Docs. 13, 15).  Because it appears that the Warden of SOCF
is the individual who now has custody of petitioner, the caption of this case has been changed to reflect the change in
petitioner's prison address and, therefore, a change in the name of the proper party respondent.  *See* Rule 2, Rules
Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254.

Appeals, First Appellate District, provided the following summary of the facts that led to

petitioner's indictment based on evidence introduced at a pretrial suppression hearing:[2]

> . . . .[O]fficers working with the regional Drug Abuse Reduction Team ("DART")
> were monitoring an apartment for drug and drug-related activity when two men
> were seen leaving.  The apartment was located in "a high drug trafficking area."
> The DART officers radioed Corey H[a]ll, a uniformed Forest Park police officer.
> They gave a description of the two men and asked Officer H[a]ll to approach
> them and obtain identification.
>
> As Officer H[a]ll approached, but before speaking to the men, he noticed that they
> smelled of alcohol and burnt marijuana.  He also noticed that the men had beer on
> their persons.  When Officer H[a]ll reached the men, he asked them for
> identification.  Render refused to produce it and began making furtive movements
> toward his waist.  He became verbally abusive and profane toward the officer.  He
> then fled to the other side of Officer H[a]ll's cruiser.  Render's hands were not
> visible, and the officer was concerned that Render might be armed.  Officer H[a]ll
> pursued Render around his cruiser several times, ordering him to stop.
>
> The officer testified at the suppression hearing that he had attempted to use his
> Taser to stop Render, but the record is unclear whether the Taser prongs struck
> Render.  The record does indicate that Render went down at this point.  But
> immediately after the officer had turned the corner of the cruiser to apprehend
> Render, he saw Render pointing a loaded revolver at the officer's head.  Officer
> H[a]ll retreated to the rear of the cruiser, and Render moved to the front.  Officer
> H[a]ll continued to order Render to stop and to show his hands.  Render then ran
> from the cruiser.
>
> As the pursuit continued, the officer continued to order Render to stop.  Render
> yelled back, "Fuck you, I'm not going to jail."  At this point, Render's hands were
> still not visible.  When Render spun to face the officer, the officer fired.  Render
> was struck and fell.
>
> Even after he had fallen, Render's hands were not visible.  When Officer H[a]ll
> approached him, he refused to remove his hands from his pockets.  Render was

---

[2]28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Because petitioner has neither cited nor presented clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings quoted herein, the state appellate court's factual findings are presumed to be correct. *See McAdoo v. Elo,* 365 F.3d 487, 493-94 (6th Cir. 2004).  Only a minor revision has been made to the court's findings in order to reflect the correct name of the police officer involved in the incident, who identified himself at the suppression hearing as "Corey Hall," *not* "Corey Hill."  (*See* Doc. 14, Ex. 12, pp. 2-3 & April 10, 2006 Hearing Tr. 12).

eventually subdued and arrested.  The officer discovered that the item Render was grabbing in his pocket was a cellular phone.  The gun Render had pointed at the officer was found under the cruiser.  H[a]ll testified that the entire incident had occurred in under one minute.

(Doc. 14, Ex. 12, pp. 2-3).

With the assistance of his trial counsel, petitioner filed a pretrial motion "to suppress all evidence resulting from the seizure of the Defendant" on the ground that "the seizure was warrantless and not supported by probable cause to believe that the Defendant was engaged in the commission of any criminal offense."  (Doc. 14, Ex. 3).  Counsel later filed an amended suppression motion to include an additional request for suppression of "any and all statements attributed to the Defendant, including but not limited to audio-taped statements, during his interrogation by police officers and other agents of the State" on the ground that the "statements were obtained in violation of Mr. Render's right to counsel and were not voluntarily made."  (Doc. 14, Ex. 4).

A hearing was held on April 10, 2006 on the suppression motions.  At that hearing, Corey Hall testified on behalf of the State, and the defense called the following witnesses to testify on petitioner's behalf:  petitioner; Darlene Miller, a Forest Park detective who participated in petitioner's interrogation after his arrest; and Kelly McGuire, petitioner's companion who witnessed the altercation between petitioner and Officer Hall.  (Doc. 14, April 10, 2006 Hearing Tr.).  After hearing the witnesses' testimony and counsels' arguments, the trial court denied the "motion to suppress in its entirety both with regard to any of the evidence, the stop, as well as the statements that were made."  (Doc. 14, Tr. 110).

Later that same day, petitioner entered a plea of no contest to all charges.  (Doc. 14, Ex. 7 & Tr. 112, 114-16).  Before accepting the no-contest plea, the court engaged in a colloquy with

3

petitioner to ensure that petitioner understood the nature of the charges; the effect of his plea; the maximum penalties that could be imposed; and the rights that he was giving up, including the right to a jury trial where "the prosecutor would have to prove [petitioner] guilty beyond a reasonable doubt of every element of the crime with which [he was] charged."  (Doc. 14, Tr. 116-30).  Upon finding petitioner had "made a knowing, intelligent and voluntary waiver" of his constitutional rights, the trial court accepted petitioner's no-contest plea and found petitioner guilty as charged.  (Doc. 14, Tr. 130-32).

On April 27, 2006, petitioner was sentenced to an aggregate prison term of eight (8) years.  (Doc. 14, Ex. 8).  Specifically, petitioner was sentenced to concurrent prison terms of eighteen (18) months for resisting arrest, five (5) years for each weapons-under-disability offense, and eighteen (18) months for carrying a concealed weapon; he also was sentenced to a three (3) year prison term on the firearm specification attached to the resisting-arrest count, which was to be served consecutively to the sentence imposed for the underlying offense.  (Doc. 14, Ex. 8).

### State Direct Appeal Proceedings

With the assistance of new counsel for appeal purposes, petitioner timely appealed to the Ohio Court of Appeals, First Appellate District, raising the following assignments of error:

1.  The trial court erred to the prejudice of Defendant-Appellant by not granting his motion to suppress [on the ground that the initial stop and continuing detention of Defendant-Appellant was illegal, and all evidence seized should have been suppressed].

2.  The trial court erred to the prejudice of Defendant-Appellant by not granting his motion to suppress [on the ground that Defendant-Appellant's statement should have been suppressed, as it was illegally obtained].

3.  The trial court erred to the prejudice of Defendant-Appellant by finding him

4

guilty of resisting arrest.

    4.  The trial court erred to the prejudice of Defendant-Appellant by sentencing him on both having weapons under disability counts.

(Doc. 14, Exs. 9-10).

On April 6, 2007, the Ohio Court of Appeals issued an Opinion overruling petitioner's assignments of error and affirming the trial court's judgment.  (Doc. 14, Ex. 12).  One of the judges on the three-judge appellate panel wrote a separate opinion concurring in part, but dissenting from the majority's decision to overrule the fourth assignment of error and uphold petitioner's separate convictions on two counts of having weapons under disability when petitioner only "had one gun." (Doc. 14, Ex. 12, pp. 10-11).

Petitioner filed a *pro se* notice of appeal to the Ohio Supreme Court.  (Doc. 14, Ex. 13). In his memorandum in support of jurisdiction, petitioner asserted the same claims of error that had been presented to the Ohio Court of Appeals.  (Doc. 14, Ex. 14).  On September 26, 2007, the Ohio Supreme Court denied petitioner leave to appeal and summarily dismissed the appeal "as not involving any substantial constitutional question."  (Doc. 14, Ex. 15).

**Application To Reopen The Appeal**

On July 6, 2007, during the pendency of his appeal to the Ohio Supreme Court from the Ohio Court of Appeals' direct appeal decision, petitioner filed a timely *pro se* application to reopen the appeal with the Ohio Court of Appeals, First Appellate District.  (Doc. 14, Ex. 16).  In the application filed pursuant to Ohio R. App. P. 26(B), petitioner alleged that his appellate counsel "rendered constitutionally ineffective assistance" because she did not argue on appeal that his trial attorney was ineffective in inducing him to enter no-contest pleas to charges that were not supported by sufficient evidence and in failing to challenge the constitutionality of his

5

sentence under *Apprendi v. New Jersey,* 530 U.S. 466 (2000), *Blakely v. Washington,* 542 U.S. 296 (2004), and *State v. Foster,* 845 N.E.2d 470 (Ohio 2006).  (Doc. 14, Ex. 16).

The Ohio Court of Appeals initially overruled petitioner's reopening application on the ground that it was barred from review by *res judicata* because the claims could have been raised to the Ohio Supreme Court in the direct review proceedings.  (Doc. 14, Ex. 18).  However, on further appeal to the Ohio Supreme Court, the state's highest court reversed the appellate court's judgment on the authority of *State v. Davis*, 894 N.E.2d 1221 (Ohio 2008), and remanded the matter to the court of appeals "for further proceedings consistent with *State v. Davis*."  (*See* Doc. 14, Exs. 18, 22).[3]

On April 28, 2009, the Ohio Court of Appeals issued a second decision upon reconsideration of petitioner's reopening application in light of *Davis*.  The court again overruled the application, but on the ground that petitioner had "failed to sustain his burden of demonstrating a genuine issue as to whether he had a colorable claim of ineffective assistance of appellate counsel."  (Doc. 14, Ex. 23).  Petitioner timely appealed that decision to the Ohio Supreme Court, which summarily dismissed the appeal "as not involving any substantial constitutional question" on August 26, 2009.  (Doc. 14, Ex. 26).

**Additional State Post-Conviction Proceedings**

On May 24, 2010, approximately nine months after the reopening proceedings concluded, petitioner filed a petition for post-conviction relief with the trial court, claiming that he was denied due process by the State's failure to disclose police reports.  (Doc. 14, Ex. 27).

---

[3]In *Davis*, 894 N.E.2d at 1224-26, the Ohio Supreme Court held that the state *res judicata* doctrine may not be applied to preclude review of an ineffective assistance of appellate counsel claim such as the one presented herein, which was properly presented in a timely reopening application under Ohio R. App. P. 26(B) and was not considered on the merits by the state supreme court on direct review.

Upon review of the Hamilton County Clerk's online docket records pertaining to petitioner's case (found at www.courtclerk.org, under Case No. B0506298), it appears that the trial court overruled the post-conviction petition on July 26, 2010, and that the Ohio Court of Appeals dismissed petitioner's appeal from that ruling on December 29, 2010. The docket further reflects that petitioner filed a notice of appeal and motion for delayed appeal on March 4, 2011. Although the delayed appeal motion still appears to be pending in the state courts, petitioner does not pursue relief in this federal habeas proceeding based on any claim raised in his state post-conviction petition or delayed appeal motion, but rather on claims that were exhausted in the state direct appeal and reopening proceedings.

**Federal Habeas Corpus**

Petitioner commenced the instant habeas corpus action in September 2010. He alleges the following grounds for relief in the petition, as amended:

**Ground One:** Motion to suppress. The State did not have a reasonable suspicion or probable cause to stop Defendant.

**Ground Two:** Statement by Defendant was in violation of United States Fifth Amendment where Defendant was under duress from being shot by police.

**Ground Three:** Defendant should not have been convicted of resisting arrest in violation of the Due Process and Equal Protection Clauses of the U.S. where charge was insufficient.

**Ground Four:** The two weapons under disability counts should have been merged for sentencing.

**Ground Five:** Appellate counsel renders constitutionally ineffective assistance of counsel on appeal where the attorney fails to cite trial counsel's deficient performance in inducing appellant to plead no contest to the charge of resisting arrest where he could not have been convicted at trial by bench or jury.

**Ground Six:** The ineffective assistance of appellate counsel is manifest where such counsel failed to cite trial counsel's ineffectiveness by inducing appellant to

plead no contest to the weapons under disability offenses where the indictment and evidence [were] insufficient to establish that appellant was the same person named in the prior convictions.

**Ground Seven:**  Appellate counsel as a matter of law is ineffective where [s]he failed to assign as error in the court of appeals trial counsel's failure to allocate appellant's sentence but rather allowed the trial court to make and use judicial factfinding to impose both maximum and consecutive sentences in this case contrary to the form and substance of [*Foster*] and [*Blakely*].

(Doc. 5, pp. 5, 6, 8, 9; Doc. 18, "Petitioner's Second Amended Petition").

## II.  OPINION

### A.  The Fourth Amendment Claim In Ground One Is Barred From Federal Habeas Review

In Ground One of the petition, petitioner alleges that he is entitled to habeas relief because the trial court erred in refusing to suppress evidence that was seized when he was stopped by the police without "reasonable suspicion or probable cause," in violation of his Fourth Amendment right to be free from unreasonable searches and seizures.  (*See* Doc. 5, p. 5). In the return of writ filed in response to the petition, respondent contends that the Supreme Court's decision in *Stone v. Powell,* 428 U.S. 465 (1976), precludes federal habeas review of petitioner's claim stemming from the denial of his suppression motion and the state courts' adjudication of the Fourth Amendment issues raised in that motion.  (Doc. 14, Brief, pp. 8-10).

As respondent has argued, the Supreme Court held in *Stone* that federal habeas courts are prohibited from addressing the merits of Fourth Amendment claims brought by state prisoners if the prisoner had a full and fair opportunity to litigate such a claim in the state courts and the presentation of the claim was not thwarted by any failure of the State's corrective process. *Stone*, 428 U.S. at 494-95.  The Sixth Circuit has developed a two-step inquiry in assessing whether *Stone* applies to preclude federal habeas review of Fourth Amendment claims.  *Riley v.*

*Gray,* 674 F.2d 522, 526 (6th Cir. 1982); *see also Machacek v. Hofbauer,* 213 F.3d 947, 952 (6th Cir. 2000).  Under that inquiry, the federal habeas corpus court must determine (1) whether the State has provided a procedural mechanism through which, in the abstract, the petitioner could raise a Fourth Amendment claim, and (2) whether the petitioner's presentation of the Fourth Amendment claim was in fact frustrated because of a failure of that mechanism.  *Id.*

In *Riley,* the Sixth Circuit held that by providing for the filing of a pretrial motion to suppress and the opportunity to directly appeal any ruling denying a suppression motion, Ohio has a  mechanism in place for the resolution of Fourth Amendment claims, which "is, in the abstract, clearly adequate."  *Riley,* 674 F.2d at 526; *see also Loza v. Mitchell,* 705 F. Supp.2d 773, 860 (S.D. Ohio 2010).  Therefore, the determination whether *Stone* applies turns solely on the resolution of the second *Riley* inquiry.  *See Hillman v. Beightler,* No. 5:09cv2538, 2010 WL 2232635, at *5 (N.D. Ohio May 26, 2010) (O'Malley, J.).

Courts have consistently held that the "relevant inquiry" in resolving the second question posed in *Riley* is whether the "habeas petitioner had an opportunity to litigate his claims, not whether he in fact did so or even whether the Fourth Amendment claim was correctly decided" by the state courts.  *Wynne v. Renico,* 279 F. Supp.2d 866, 892 (E.D. Mich. 2003) (citing *Ortiz-Sandoval v. Gomez,* 81 F.3d 891, 899 (9th Cir. 1996)).[4]

> As long as a state prisoner has had an opportunity to litigate his Fourth
> Amendment claims by means of procedures that are "suitably crafted" to test for
> possible Fourth Amendment violations, a federal habeas court does not have the
> power, under *Stone,* to "second-guess the accuracy of the state courts'" resolution

---

[4]The district court later supplemented its opinion in *Wynne* on another issue, which was determined to be sufficiently meritorious to justify the granting of a conditional writ of habeas corpus.  *See Wynne v. Renico,* 595 F. Supp.2d 775 (E.D. Mich. 2009).  Thereafter, the Sixth Circuit reversed the district court's revised judgment granting habeas corpus relief based on that other ground; the Supreme Court recently denied certiorari review of the Sixth Circuit's decision.  *Wynne v. Renico,* 606 F.3d 867 (6th Cir. 2010), *cert. denied,* __ S.Ct. __, 2011 WL 1631061 (U.S. May 2, 2011) (No. 10-865, 10A372).

> of those claims.". . .  Thus, a "mistaken outcome" of a suppression hearing that
> has been conducted in a state trial court, standing alone, does not deny a habeas
> petitioner's opportunity to fully and fairly litigate his Fourth Amendment
> claims.... Thus, even "potentially meritorious Fourth Amendment claims" are
> barred by *Stone* on habeas review if the petitioner had a full and fair opportunity
> to litigate his claims in the state courts.

*Id.* (quoting *Sanna v. Dipaolo,* 265 F.3d 1, 8-9 (1st Cir. 2001), and *Deputy v. Taylor,* 19 F.3d

1485, 1491 (3rd Cir. 1994)); *see also Hillman, supra,* 2010 WL 2232635, at *5 (quoting *Cabrera*

*v. Hinsley,* 324 F.3d 527, 531-32 (7th Cir. 2003)) ("Absent a subversion of the hearing process,

we will not examine whether the judge got the decision right. . . .  '[F]ull and fair' guarantees the

right to present one's case, but it does not guarantee a correct result."); *Brown v. Berghuis*, 638

F. Supp.2d 795, 812 (E.D. Mich. 2009) (and cases cited therein) ("Under *Stone*, . . . the

correctness of the state courts' conclusions is simply irrelevant.").

The Sixth Circuit has stated that the second *Riley* inquiry is "not meant to be a case by

case review of state court determinations," but rather "is a review of whether the state provided

an adequate mechanism to address Petitioner's Fourth Amendment claims."  *Abdul-Mateen v.*

*Hofbauer,* No. 98-2323, 2000 WL 687653, at *3 (6th Cir. May 19, 2000).  In *Abdul-Mateen*, the

court recognized that an exception was carved out in *Riley* for "egregious error in the application

of fourth amendment principles" amounting to a refusal by the state courts to consider or apply

controlling Supreme Court precedents.  *See id.* (quoting *Riley,* 674 F.2d at 526, in turn citing

*Gamble v. Oklahoma,* 583 F.2d 1161 (10th Cir. 1978)).  In *Riley,* the Sixth Circuit explained that

when an "egregious error" of such "magnitude and nature" is present, as it was in *Gamble*, "a

federal habeas court *might* be justified in concluding that an opportunity for a full and fair

hearing had not been afforded the petitioner."  *Riley,* 674 F.2d at 526 (emphasis added).  In a

subsequent decision, the Sixth Circuit rejected a petitioner's argument that an egregious

10

misapplication of a controlling Supreme Court precedent also could justify such a conclusion. *Gilbert v. Parke,* 763 F.2d 821, 824 (6th Cir. 1985). The court reasoned: "This court in *Riley* declined to adopt the portion of *Gamble* permitting federal review of egregious substantive errors committed by state courts on Fourth Amendment claims. . . . Since the [state] courts provided Gilbert a full and fair opportunity to litigate his Fourth Amendment claims, second-guessing the [state] Supreme Court on the merits would be inconsistent with *Stone*." *Id.*

Here, as in *Gilbert*, the record does not reflect the magnitude or type of "egregious error" referred to in *Riley* as possibly justifying a finding that the opportunity for a full and fair hearing was thwarted. *Cf. Bergholz v. McMackin,* No. 89-3740, 1990 WL 223036, at *3 (6th Cir. Dec. 27, 1990) (per curiam) (in ruling that *Stone* foreclosed the petitioner's Fourth Amendment claim, the Sixth Circuit pointed out that "even if the state courts were in error in applying substantive law regarding 'seizures' under the Fourth Amendment, the state courts did not refuse to follow applicable precedent"). Indeed, on the contrary, it appears clear from the record that petitioner was able to fully and fairly litigate his claim of a Fourth Amendment violation in the state courts.

First, petitioner was able to present his claim to the trial court by way of a suppression motion, which he was allowed to amend and supplement. (*See* Doc. 14, Exs. 3-5). Before ruling on the motion, the trial court held a hearing where defense counsel was provided the opportunity to cross-examine the State's witness, to present witnesses on petitioner's behalf, and to assert arguments in support of the suppression motion. (Doc. 14, April 10, 2006 Hearing Tr. 12-105).

Second, after the trial court denied the suppression motion and petitioner entered his no-contest plea, petitioner was able to challenge the trial court's decision on direct appeal to the Ohio Court of Appeals and Ohio Supreme Court. Specifically, on appeal, petitioner argued that

the evidence seized during the "investigatory stop" should have been suppressed because the police officer lacked "probable cause" or "any reasonable, articulable suspicion" to stop and detain him.  (Doc. 14, Ex. 10, pp. 2-3; Ex. 14, pp. 7-12).  The Ohio Court of Appeals carefully considered and rejected this argument, finding that (1) Officer Hall "did not need probable cause or reasonable suspicion" when he initially approached petitioner and asked for his identification; (2) the "ensuing encounter and chase did not amount to a Fourth Amendment violation" because petitioner "never submitted to the authority of Officer H[a]ll prior to abandoning the gun;" and (3) even if the Fourth Amendment was implicated when Hall "deployed his Taser," the officer had "reasonable suspicion to justify a 'stop'" given that petitioner "had just left a building being investigated for drug-related activity . . . in a 'high drug activity area'" and "immediately became hostile and uncooperative, made suspicious movements around his waist area, and fled."  (Doc. 14, Ex. 12, pp. 5-7).[5]  Although the Ohio Supreme Court denied petitioner leave to appeal and summarily dismissed the appeal that followed the state appellate court's decision, it did so apparently because it was not persuaded by petitioner's memorandum in support of jurisdiction that the claim merited further consideration.  (Doc. 14, Ex. 15).

Accordingly, in sum, the undersigned concludes that the claim alleged in Ground One of the petition, challenging the denial of petitioner's motion to suppress evidence seized in violation of the Fourth Amendment, is barred from review under the Supreme Court's *Stone* decision.  Federal habeas review of Ground One is prohibited because petitioner was provided a full and fair opportunity in the state courts to litigate the claim, and the presentation of the claim

---

[5]In concluding that petitioner's "seizure was sufficiently supported by a reasonable, articulable suspicion," the court of appeals pointed out that the Supreme Court held in *Illinois v. Wardlow*, 528 U.S. 119 (2000), that "an accused's presence in a high-crime area, coupled with his unprovoked flight at the sight of a police officer, constitutes reasonable suspicion to justify a stop."  (Doc. 14, Ex. 12, p. 7).

was not thwarted by any failure of the State's corrective process.  *Cf. Stone*, 428 U.S. at 494-95.

**B. Petitioner Waived The Claim In Ground Three Challenging The Sufficiency Of Evidence Supporting His Conviction For Resisting Arrest When He Knowingly And Voluntarily Entered A No-Contest Plea To The Offense Charged In The Indictment**

In Ground Three of the petition, petitioner claims that his conviction and sentence for resisting arrest cannot stand because the evidence is insufficient to support the criminal charge. (Doc. 5, p. 8).  Respondent argues in the return of writ that petitioner waived the claim of error when he entered his plea of no contest to the count as charged in the indictment.   (Doc. 14, Brief, pp. 10-12).  Respondent's argument has merit.

A guilty or no-contest plea involves a waiver of many substantial constitutional rights, including the right to a trial by jury where the State has the burden of proving the defendant's guilt beyond a reasonable doubt, the right to confront adverse witnesses, and the right to present evidence in one's defense.  *Fautenberry v. Mitchell,* 515 F.3d 614, 636 (6th Cir. 2008) (citing *Boykin v. Alabama,* 395 U.S. 238, 243 (1969)).  The undersigned has reviewed the transcript of petitioner's plea hearing held on April 10, 2006, which plainly reveals that petitioner knowingly and voluntarily waived all these rights when he entered his plea of no contest to all charges in the indictment.  (*See* Doc. 14, April 10, 2006 Hearing Tr. 116-30).

By forfeiting his right to a jury trial, as well as his rights to confront adverse witnesses and to present evidence in his defense, petitioner waived any objection to the sufficiency of the evidence.  *See Post v. Bradshaw,* 621 F.3d 406, 426-27 (6th Cir. 2010), *cert. denied*, __ S.Ct. __, 2011 WL 844952 (U.S. May 23, 2011) (No. 10-9352).  The Ohio Court of Appeals, which was the only state court to address the merits of petitioner's claim challenging his conviction for resisting arrest, also concluded that petitioner's no-contest plea precluded relief.  The court

13

reasoned in relevant part:

> . . . .While a no-contest plea is not an admission of guilt, it is "an admission of the truth of the facts alleged in the indictment."  The Supreme Court of Ohio has held that, upon receipt of a no-contest plea, a trial court *must* find a defendant guilty of the charged offense if the indictment alleges sufficient facts to state a felony offense.  This court has also held that "where * * * an indictment contains sufficient allegations to state a felony offense and a court accepts an intelligent and voluntary plea of no-contest, it must find the defendant guilty of the offense charged."

> The indictment in this case mirrored the language of R.C. 2921.33(B).  Render pled no-contest to the offense as stated in the indictment.  He did not, and has not, raised an issue regarding the validity of his plea.  Therefore, Render admitted to the trial court that he had "recklessly resisted lawful arrest of himself," and that "during the course of the resistance, [he had] brandished a deadly weapon."  Upon the authority of our decisions in [the above-cited cases], the trial court properly found Render guilty based on those admissions.

(Doc. 14, Ex. 12, p. 8) (footnote citations omitted) (emphasis in original).

The undersigned is persuaded by both the Sixth Circuit precedents and the state cases relied on by the Ohio Court of Appeals in overruling petitioner's assignment of error that petitioner's plea of no-contest forecloses relief on his claim challenging the sufficiency of evidence supporting the charge of resisting arrest.  Accordingly, petitioner is not entitled to habeas relief based on the claim alleged in Ground Three of the petition.

### C. The Claim In Ground Two, Alleging that Petitioner's Statements To The Police Were Obtained In Violation Of Petitioner's Fifth Amendment Rights, Lacks Merit

In Ground Two of the petition, petitioner alleges that he is entitled to habeas relief because the trial court should have suppressed statements he made to the police "under duress" after he was shot, which were obtained in violation of his Fifth Amendment rights.  (Doc. 5, p. 6).  Petitioner has not set forth any facts supporting this claim in the petition.  However, on appeal in the state courts, he contended that his statements should have been suppressed because

14

he was not advised of his Fifth Amendment rights, as set forth in *Miranda v. Arizona,* 384 U.S. 436 (1966); he also argued that "[a]ny statement taken" after he was shot "was under duress and was illegally obtained," because he was "subjected to coerced interrogation without the presence of counsel" while "requiring responsive treatment for his serious injury the entire time." (Doc. 14, Ex. 10, pp. 3-4; Ex. 14, pp. 12-13).

At the suppression hearing held on April 10, 2006, defense counsel called Darlene Miller, the police detective who interviewed petitioner, as a witness. Miller testified that her initial contact with petitioner took place at the Forest Park police station after petitioner's release from a medical facility where he had received treatment for his gunshot wound. (Doc. 14, April 10, 2006 Hearing Tr. 41-42). Miller stated that petitioner "had a bandage on his side" and "appeared fine, just injured." (Doc. 14, Tr. 42). Miller identified herself to petitioner and told him she "needed to speak with him about what had occurred." (Doc. 14, Tr. 43). Apparently, petitioner informed Miller at the beginning of their conversation that he thought he needed additional medical treatment because he "was leaking from his body." (Doc. 14, Tr. 43, 46-47). Miller testified that she "called our medic, our squad. They responded to the station, checked Mr. Render out. He refused to be transported at that time, said he was fine, signed a medical release, and I continued with my interview." (Doc. 14, Tr. 43-44). Miller later testified that she was not involved in obtaining petitioner's medical release signature, and that it was the medics who gave petitioner the "refusal to treat form" to sign. (Doc. 14, Tr. 47).

Miller stated that before she asked any questions, she advised petitioner "of all his *Miranda*" rights after ascertaining that petitioner was "conscious," "coherent" and "lucid," and that his "injuries were [not] interfering with his ability to communicate or understand." (Doc.

15

14, Tr. 49-51).  Miller provided petitioner with only one form–the *Miranda* rights waiver form, which she "went through" with petitioner "line by line."  (Doc. 14, Tr. 49-52).  Miller testified that petitioner indicated to her that he was unable to sign the form because of his injury.  (Doc. 14, Tr. 52).  Therefore, Miller asked petitioner "to do something, the best he could to show that he in fact had had that form reviewed," and petitioner responded by writing his initials on the form.  (Doc. 14, Tr. 52-53).

Miller testified further that she did not make any promises or threats to induce petitioner to talk.  (Doc. 14, Tr. 54).  She also said that "based on [her] contact with the defendant," she believed petitioner understood his *Miranda* rights and that he "was waiving those rights and was making a . . . voluntary statement to [her] about what had occurred."  (Doc. 14, Tr. 54).  Miller testified in relevant part as follows regarding the substance of the statement that petitioner gave after waiving his *Miranda* rights:

> Mr. Render informed me that he had been visiting with a friend at the Winton House. . . .  He left that apartment with his friend Kelly McGuire.  They were walking back to Mr. Render's apartment off of Pennington Court.  He told me that as they were cutting through the back side, they observed what they believed was undercover police officers, one sitting in a car, the other outside the building.
>
> He said that they were still walking when Officer Hall approached them and asked them for identification.  He told me that he asked Officer Hall why he was stopping him and he chose not to cooperate with Officer Hall.
>
> He told me the reason he chose not to cooperate was because he had a firearm on him and did not wish to go back to prison for having possession of a firearm.
>
> He stated at the time he started running from Officer Hall, running around the cruiser in an attempt to hide the firearm before Officer Hall could see it.  He said Officer Hall tased him and he fell, removed the taser from him and continued on before he was shot.  At that time he stopped.

(Doc. 14, Tr. 45-46).

16

Petitioner provided testimony at the suppression hearing, which contradicted Officer Miller's version of events.  He testified that he told Miller that he would not give a statement, and that when he informed her he needed medical attention, she refused to get him help unless he cooperated.  (Doc. 14, Tr. 78).  Petitioner stated:  "She also told me if I cooperated with her that she would let me see my wife.  And wasn't nobody there trying to help me so I complied with her.  I told her what happened."  (Doc. 14, Tr. 79).  Petitioner testified further that Miller never advised him of his *Miranda* rights; that he did not initial any *Miranda* rights waiver form; that he did not waive his right to talk to an attorney; and that Miller called in a paramedic to treat him only after he agreed to give an oral statement.  (Doc. 14, Tr. 78-79, 95).

After hearing the witnesses' testimony and counsel's arguments, the trial court denied petitioner's suppression motion.  The court stated on the record the reasons for its decision:

> The burden is on the State to prove by a preponderance of the evidence that the defendant waived his *Miranda* Rights and made the statements voluntarily.
>
> The Court must consider the totality of the circumstances including such things as police methods of interrogation, age or mentality of the defendant, the condition of the defendant, and the atmosphere of the interrogation.  If any promises, threats or misstatements of law were made to the defendant by the police in order to induce the defendant to speak.
>
> In the present case, . . . the discrepancy as far as what happened, much conflicting evidence has been presented.  The Court does find that the testimony of the police officer is more credible and the evidence shows that the defendant knowingly, intelligently and voluntarily waived his *Miranda* Rights and voluntarily made statements to the police.
>
> Accordingly, the statements were not illegally obtained. . . .
>
> The Court also notes for the record that it appears that statements by both the defendant and the defendant's witness, Mr. McGuire, seem to acknowledge that there was a gun and that Mr. Render discarded it, and so for that matter, I'm not sure that the statements are really that big a factor at this stage, but nevertheless the statements are admissible.

(Doc. 14, Tr. 109-11).

The trial court's ruling was affirmed on direct appeal.  The Ohio Court of Appeals, which was the last state court to issue a reasoned decision addressing petitioner's Fifth Amendment claim, held that petitioner's statement was properly admitted.  (Doc. 14, Ex. 12, p. 7).  Without citing any legal standards, the court explained that the trial court's finding that "the detective was more credible" than petitioner "was purely a factual determination, and based on the record, . . . was not an abuse of discretion."  (Doc. 14, Ex. 12, p. 7).

Generally, in a case such as this where the constitutional claim was adjudicated on the merits by the state courts, the standard of review to apply is set forth in 28 U.S.C. § 2254(d). Under that provision, a writ of habeas corpus may not issue unless the state courts' adjudication of the constitutional issue either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).  The provision applies even in cases where the state courts summarily reject a claim or issue a ruling "unaccompanied by an opinion explaining the reasons relief has been denied."  *Harrington v. Richter,* __ U.S. __, 131 S.Ct. 770, 784-85 (2011).

Here, however, no legal issue is presented to call into question whether the state courts' adjudication of petitioner's Fifth Amendment claim was contrary to or involved an unreasonable application of controlling Supreme Court precedents.  The parties have not disputed that the Fifth Amendment privilege against self-incrimination, applicable to the States through the Fourteenth Amendment, *Malloy v. Hogan*, 378 U.S. 1, 8 (1964), forbids the State's use of

statements, "whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination;" these procedural safeguards require that the accused be informed of his right to remain silent and to the assistance of counsel, either retained or appointed, during the custodial interrogation, and that anything he says can be used against him in a court of law. *Miranda v. Arizona*, 384 U.S. 436, 444, 478-79 (1966). The parties also do not dispute that a defendant can waive his *Miranda* rights as long as the waiver is voluntary, knowing, and intelligent. *See id.* at 444.

Finally, it is undisputed that the admission of a coerced confession, where the conduct of law enforcement officials was such as to overbear the accused's will to resist, thus bringing about a confession not freely self-determined, violates due process. *See, e.g., Beckwith v. United States*, 425 U.S. 341, 347-48 (1976) (citing *Rogers v. Richmond*, 365 U.S. 534, 544 (1961)); *see also Dickerson v. United States,* 530 U.S. 428, 434 (2000); *Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26 (1973). Conversely, it is well-settled that "[a]ny statement given freely and voluntarily without any compelling influence is, of course, admissible in evidence." *Mason v. Mitchell*, 320 F.3d 604, 632 (6th Cir. 2003) (quoting *Miranda,* 384 U.S. at 478). As the trial court understood in addressing whether petitioner's statements to the police should be suppressed, courts must consider the totality of the circumstances in determining the voluntariness of an accused's confession to law enforcement officials, including: (1) whether there was police coercion; (2) the length of the interrogation; (3) the location of the interrogation; (4) the continuity of the interrogation; (5) the suspect's maturity; (6) the suspect's education; (7) the suspect's physical condition and mental health; and, (8) whether the suspect

was advised of his *Miranda* rights.  *Withrow v. Williams,* 507 U.S. 680, 693-94 (1993) (internal citations omitted).

In this case, the Court's review is limited because the state courts' resolution of petitioner's Fifth Amendment claim turned solely on a credibility determination in resolving the conflict between Officer Miller's and petitioner's testimony as to whether *Miranda* warnings were given; whether petitioner voluntarily and knowingly waived his *Miranda* rights by initialing a waiver form provided to and reviewed with him by Officer Miller; and whether Officer Miller coerced petitioner into giving a statement by the use of threats or promises and, more specifically, by refusing petitioner's request for additional medical treatment of his gunshot injury unless he agreed to talk about the events that occurred the previous night.

The trial judge's credibility determination at the suppression hearing in favor of Officer Miller's account fell within the judge's "proper role" and must be presumed correct under 28 U.S.C. § 2254(e)(1).  *Ramonez v. Berghuis*, 490 F.3d 482, 490 (6th Cir. 2007) (citing *Hill v. Brigano*, 199 F.3d 833, 840-41 (6th Cir. 1999) (where the Sixth Circuit concluded that the state court's determination that a law enforcement official's testimony "was more credible than the defendant's testimony was not unreasonable" and presumed correct under § 2254(e)(1)); *see also Mason*, 320 F.3d at 632 (deferring to the state courts' factual finding supporting the conclusion that the petitioner's statements were voluntary in the absence of "clear and convincing evidence to the contrary"); *Bailey v. Hamby*, 744 F.2d 24, 26 (6th Cir. 1984) ("The question whether a suspect was properly informed of his *Miranda* rights is a strictly factual one, and the decision by a state court on the matter is entitled to a great deal of deference in a habeas proceeding.").  *Cf. Miller v. Fenton,* 474 U.S. 104, 110, 112, 116-17 (1985) (in holding that the "ultimate issue of

'voluntariness' is a legal question requiring independent federal determination" based on the "totality of circumstances," the Court also recognized that state-court findings on "subsidiary factual questions," such as "whether in fact the police engaged in the intimidation tactics alleged by the defendant," which "often require[s] the resolution of conflicting testimony of police and defendant, . . . are conclusive on the habeas court if fairly supported in the record").

Under 28 U.S.C. § 2254(e)(1), petitioner bears the burden of rebutting the presumption of correctness to be accorded the state courts' factual determinations with clear and convincing evidence. The only evidence that petitioner has presented to contradict the state courts' findings is his own self-interested contradictory account of his police interrogation. Such testimony is insufficent to constitute "clear and convincing evidence" rebutting the trial court's assessment of the witnesses' credibility in favor of Officer Miller.

Here, the state courts could reasonably conclude on the basis of Miller's testimony that (1) *Miranda* warnings were given to and knowingly and voluntarily waived by petitioner before he made any statements; and (2) petitioner freely and voluntarily gave an account of the preceding evening's events in the absence of any threats, promises or coercive influence on the part of Miller to induce him to talk. Petitioner, therefore, is not entitled to habeas relief based on the claim alleged in Ground Two of the petition challenging the denial of his suppression motion on Fifth Amendment grounds.

### D. The Ineffective Assistance Of Appellate Counsel Claims Alleged In Grounds Five Through Seven Of The Amended Petition Lack Merit

In Grounds Five through Seven of the amended petition, petitioner alleges that his appellate counsel was ineffective because she did not assert three ineffective assistance of trial counsel claims as assignments of error on direct appeal. Specifically, petitioner contends that his appellate counsel should have alleged that his trial counsel provided ineffective assistance by (1) inducing him to plead no contest to resisting arrest despite the fact that the charge lacked sufficient evidentiary support; (2) inducing him to plead no contest to the weapons-under-disability charges without sufficient proof that he was the "same person named in the prior convictions;" and (3) failing to assert an objection at sentencing to the trial court's use of "judicial factfinding to impose both maximum and consecutive sentences in this case," in violation of the Supreme Court's decision in *Blakely v. Washington,* 542 U.S. 296 (2004), as applied by the Ohio Supreme Court in *State v. Foster,* 845 N.E.2d 470 (Ohio 2006), to Ohio's sentencing statute. (Doc. 18, "Petitioner's Second Amended Petition").

Petitioner raised the three ineffective assistance of appellate counsel claims to the state courts in his application for reopening of the appeal. (*See* Doc. 14, Ex. 16). The Ohio Court of Appeals was the only state court to issue a reasoned decision addressing the merits of petitioner's claims when it denied the reopening application on remand; the court ruled in relevant part as follows:

> An application to reopen an appeal must be granted if the applicant establishes "a 'genuine issue' as to whether he has a 'colorable claim' of ineffective assistance of counsel on appeal." The United States Supreme Court's decision in *Strickland v. Washington* provides the standard for determining whether the applicant was denied the effective assistance of appellate counsel. The applicant must prove "that his counsel [was] deficient for failing to raise the issues he now presents and

22

that there was a reasonable probability of success had [counsel] presented those claims on appeal."

Render contends that he was denied the effective assistance of counsel on appeal because his appellate counsel failed to assign as error his trial counsel's ineffectiveness in "inducing" him to plead no contest to resisting arrest and having weapons under a disability, when the evidence, if presented at a trial, would have been insufficient to prove his guilt.

Render's contention that his no-contest plea to resisting arrest was the involuntary product of his trial counsel's ineffectiveness fails in its underlying premise. In his appeal, we overruled an assignment of error challenging the overruling of Render's motion to suppress. In so doing, we concluded that the police had stopped Render upon reasonable suspicion. The evidence adduced at the hearing on the motion to suppress also provided a basis for concluding that the pursuing officer had had probable cause to arrest Render, and that Render had resisted arrest. Because the record on appeal disclosed sufficient evidence to support a conviction for resisting arrest, Render's appellate counsel cannot be said to have been deficient in failing to assign as error trial counsel's competence in counseling Render's plea to the charge.

In support of his proposed challenge to the voluntary nature of his no-contest pleas to the two weapons charges, Render argues that his trial counsel "induced" him to enter the pleas "without sufficient proof" that he was the person named in the prior convictions. This challenge depends for its success upon evidence outside the record showing that Render was not, in fact, the person named in the prior convictions. Thus, the appropriate vehicle for advancing the challenge is a postconviction petition. It follows that appellate counsel was not deficient in failing to assign this matter as error in Render's direct appeal.

Render also assails his appellate counsel's competence in failing to assign as error his trial counsel's ineffectiveness in "allowing" the trial court, in contravention of the . . . decisions in *Blakely v. Washington* and *State v. Foster*, "to make and use 'judicial factfindings' to enhance [his] sentence[s]." But the record does not show that the trial court, in sentencing Render, engaged in the judicial factfinding condemned in *Blakely* and *Foster*. Thus, neither trial counsel nor appellate counsel can be said to have been ineffective in failing to challenge his sentences on that basis.

Render has thus failed to sustain his burden of demonstrating a genuine issue as to whether he has a colorable claim of ineffective assistance of appellate counsel.

(Doc. 14, Ex. 23) (footnote citations omitted).

As discussed above, *see supra* p. 18, a writ of habeas corpus may not issue with respect to petitioner's ineffective assistance of appellate counsel claims, which were adjudicated on the merits by the state courts, unless the state courts' adjudication either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

A legal principle is "clearly established" for purposes of habeas corpus review under § 2254(d)(1) "only when it is embodied in a holding of [the Supreme] Court." *Thaler v. Haynes,* _ U.S. _, 130 S.Ct. 1171, 1173 (2010).  "[A] federal habeas court reviewing the state-court judgment must apply the law that controlled 'at the time his state-court conviction became final.'" *Miller v. Stovall,* 608 F.3d 913, 919 (6th Cir. 2010) (quoting *Williams v. Taylor,* 529 U.S. 362, 390 (2000)), *petition for cert. filed,* 79 U.S.L.W. 3404 (U.S. Dec. 21, 2010) (No. 10-851).

In addition, the "contrary to" and "unreasonable application" clauses set forth in 28 U.S.C. § 2254(d)(1) have independent meanings:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts. . . .  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from [the Supreme Court's] decisions but unreasonably applies it to the facts of a particular case. . . .  The focus on the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694 (2002) (citation omitted).

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter,* __ U.S. __, 131 S.Ct. 770, 786 (2011).  In other words, to obtain federal habeas relief under that provision, the state prisoner must show that the state court ruling on the claim presented "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.  Moreover, under the "unreasonable application clause" inquiry, the writ may issue only if the application is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams,* 529 U.S. at 412).

In the instant case, the Ohio Court of Appeals correctly identified and reasonably applied the clearly-established two-part standard of review enunciated by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668 (1984), in addressing petitioner's ineffective assistance of appellate counsel claims.  As the state appellate court recognized, to establish a *Strickland* violation, petitioner must demonstrate both (1) his attorney on direct appeal made such serious errors that she was not functioning as the "counsel" guaranteed by the Sixth Amendment; and (2) counsel's deficient performance prejudiced the defense.  *See Strickland*, 466 U.S. at 687.

Under the first prong of the *Strickland* test, it must be shown that appellate counsel's representation fell below an objective standard of reasonableness based on all the circumstances

surrounding the case.  *Id.* at 688.  In determining whether or not counsel's performance was deficient, the Court must indulge a strong presumption that the challenged conduct fell within the wide range of reasonable professional assistance.  *Id.* at 689.

It is well-settled that appellate counsel is not deficient under the first prong of the *Strickland* test for "failing to raise on direct appeal nonfrivolous claims after deciding as a matter of professional judgment not to raise those points."  *Friday v. Pitcher,* 99 F. App'x 568, 575 (6th Cir. 2004) (quoting *Buell v. Mitchell,* 274 F.3d 337, 352 (6th Cir. 2001)); *see also Carter v. Wolfenbarger,* 347 F. App'x 205, 211 (6th Cir. 2009) (citing *Jones v. Barnes,* 463 U.S. 745, 751 (1983)).  Rather, the  "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."  *Smith v. Murray,* 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52); *see also Coleman v. Mitchell,* 268 F.3d 417, 430-31 (6th Cir. 2001).  It is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim on direct appeal;  however, "[g]enerally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome."  *Smith v. Robbins,* 528 U.S. 259, 288 (2000) (quoting *Gray v. Greer,* 800 F.2d 644, 646 (7th Cir. 1986)); *see also Wilson v. Hurley,* 108 F. App'x 375, 379 (6th Cir. 2004).

To satisfy the second "prejudice" prong of the *Strickland* test, petitioner must demonstrate that a "reasonable probability" exists that, but for his counsel's errors, the result of the direct appeal proceeding would have been different.  *See Strickland,* 466 U.S. at 694. Petitioner has met his burden if he shows that the result of the appeal would "reasonably likely have been different absent the errors."  *Id.* at 695.

26

The Court need not examine the question of whether counsel's performance was deficient before addressing the question of whether petitioner was prejudiced by counsel's performance. The Court may dispose of an ineffective assistance of counsel claim by finding that petitioner has made an insufficient showing on either ground. *Id*. at 697.

Here, the undersigned finds that the state appellate courts' adjudication of petitioner's ineffective assistance of appellate counsel claims neither was contrary to nor involved an unreasonable application of *Strickland* and was based on a reasonable determination of the facts in light of the record evidence.

First, as the Ohio Court of Appeals reasonably concluded, petitioner has not demonstrated that his appellate counsel acted unreasonably under the first prong of the *Strickland* test when she failed to assert a claim challenging trial counsel's advice to plead no contest to resisting arrest. On direct appeal, petitioner's counsel argued that the resisting-arrest conviction should be reversed because in *State v. Carroll,* 834 N.E.2d 843 (Ohio Ct. App. 1 Dist. 2005), the First District Court of Appeals "held that where police are not attempting to arrest a defendant when he flees, a conviction for resisting arrest cannot stand." (Doc. 14, Ex. 10, p. 4). In *Carroll,* 834 N.E.2d at 846, the court concluded that the State failed to prove an essential element of the resisting-arrest offense because the record evidence demonstrated that the defendant "was not actually arrested until [a police officer] had already subdued him."

Here, in contrast, as the state appellate court pointed out in addressing the corollary ineffective assistance of counsel claim, evidence was adduced at the suppression hearing to support the reasonable inference that the pursuing police officer had "probable cause to arrest" when petitioner drew a gun on him and that petitioner "resisted arrest" before he was finally

27

subdued.  *Cf. State v. Vactor*, No. 02CA008068, 2003 WL 23095277, at *8 (Ohio  Ct. App. 9

Dist. Dec. 31, 2003) (while recognizing that fleeing from a request for a *Terry*-type stop,

"[w]here articulable suspicion, but not probable cause to arrest exists," does not constitute the

crime of resisting arrest, the court held that there was sufficient evidence for the jury to find the

defendant guilty of the offense where, by fleeing, he prevented the police officer from

completing a pat-down search and thus gave the officer probable cause to arrest him for

obstructing official business and, thereafter, resisted arrest when the officer attempted to restrain

him after he was tackled by a bystander).

Indeed, at the suppression hearing, the following testimony was elicited during Corey

Hall's direct examination, which provides further evidentiary support for the charge:

> Q.  At some point in time . . . when you first saw the defendant making a
> movement towards his stomach or his waistband and then you saw the gun, was
> there a time when you determined that you were going to have to arrest him for
> more serious charges [than public intoxication]?
>
> A.  Yes.
>
> Q.  Now, at the time after the defendant was shot and on the ground, and you're
> going to him, how much time went by before you were able to bring him under
> control?
>
> A.  While he was lying there on the ground, he finally pulled out a cell phone
> after that.  I continued to yell for him to stop.  He still kept moving around,
> wouldn't lay down like I told him to.
>
> Q.  Were you in the process when you were telling him to stop, of attempting to
> arrest him?
>
> A.  Yes.
>
> Q.  Were his actions in any way interfering with your attempt to do that?
>
> A.  Yes, they were.

(Doc. 14, April 10, 2006 Hearing Tr. 27).

In sum, a rational juror could infer from the evidence elicited at the suppression hearing that petitioner was guilty of resisting arrest because he refused to cooperate with Officer Hall after the police officer had probable cause to arrest him for a weapons offense and even after petitioner was shot.  Therefore, it was reasonable for the state appellate court to determine both that petitioner's trial counsel acted well within the wide range of reasonable professional assistance in counseling petitioner to enter a no-contest plea to the charge and that his appellate counsel was not deficient in failing to raise a claim on direct appeal challenging trial counsel's conduct in that matter.

Second, the record belies petitioner's contention that the weapons-under-disability charges were not supported by adequate evidentiary proof that petitioner was the "same person named in the prior convictions."  (*See* Doc. 18, "Petitioner's Second Amended Petition"). Petitioner admitted at the suppression hearing that he was the person who had been previously charged and convicted in Butler County for robbery and also, in 1982, for a felony drug abuse offense.  (Doc. 14, April 10, 2006 Hearing Tr. 80-82).  Petitioner affirmed that he "went to the joint for four years" for the robbery offense and was placed in "post-release control" upon his release from prison.  (Doc. 14, Tr. 80-81).  Petitioner also affirmed that he knew he was not "supposed to have a gun," but that he had one concealed in the waistband of his pants, when he was stopped for questioning by Officer Hall.  (Doc. 14, Tr. 81).  Contrary to petitioner's contention, it thus appears clear that there was a factual basis for the weapons-under-disability offenses charged in the indictment.  Therefore, petitioner has not demonstrated that his trial counsel acted unreasonably in advising him to plead no contest to those charges, or that his

appellate counsel was ineffective in failing to raise an ineffective assistance of trial counsel claim on direct appeal based on such conduct.

Finally, as the Ohio appellate court reasonably concluded, petitioner has not demonstrated that his trial or appellate counsel was ineffective in failing to raise a *Blakely/Foster* claim challenging the sentence that was imposed.

In *Blakely v. Washington*, 542 U.S. 296 (2004)*,* the Supreme Court held that the Sixth Amendment jury trial right extends to the sentencing context to the extent that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Blakely,* 542 U.S. at 303. The *Blakely* Court defined the "statutory maximum" as "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Id.* Thereafter, in *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court extended the reasoning of *Blakely* to the federal sentencing guidelines; the Court held that the Sixth Amendment as construed in *Blakely* applied to the guidelines and thus any fact (other than a prior conviction) that increases a federal criminal defendant's sentence beyond the statutory maximum must be presented to a jury and proved beyond a reasonable doubt. *See Booker*, 543 U.S. at 244.

In *State v. Foster,* 845 N.E.2d 470 (Ohio 2006), which was decided in February 2006 *before* petitioner was sentenced in this case, the Ohio Supreme Court held that certain provisions of Ohio's sentencing statute were unconstitutional under the Supreme Court's *Blakely* and *Booker* decisions. Specifically, the *Foster* court determined that "Ohio's sentencing statutes offend the constitutional principles announced in *Blakely* in four areas" mandating additional

30

judicial factfinding before the imposition of (1) more than the minimum term for those who have

never served a prison term; (2) the maximum prison term; (3) consecutive prison terms; and (4)

repeat-violent-offender and major-drug-offender penalty enhancements.  *See Foster,* 845 N.E.2d

at 490-94.[6]  Turning next to the question of what the appropriate remedy should be to bring

about compliance with *Blakely*, the *Foster* court adopted the approach taken in *Booker* of

severing from Ohio's sentencing statute the *Blakely*-offending portions of that statute and

granting trial courts "full discretion to impose a prison sentence within the statutory range"

without having to make findings or give reasons for imposing maximum, consecutive, or more

than minimum sentences.  *See id.* at 494-98.

In this case, the Ohio Court of Appeals found that the trial court did not engage "in the

judicial factfinding condemned in *Blakely* and *Foster*."  (Doc. 14, Ex. 23, p. 3).  The state court's

factual finding is presumed correct in the absence of "clear and convincing evidence" to the

contrary.  *See* 28 U.S.C. § 2254(e)(1).  Indeed, under the severance remedy adopted in *Foster* to

cure the constitutional infirmities in Ohio's sentencing statute, the trial court was not required to

make any additional findings of fact to sentence petitioner to concurrent terms of imprisonment

within the ranges allowed for each offense.  Therefore, petitioner is unable to prevail on any

claim that his trial and appellate attorneys acted unreasonably or prejudicially in failing to

challenge the sentence imposed in this case as a violation of *Blakely* or *Foster*.

Accordingly, in sum, the undersigned concludes that it was reasonable for the Ohio Court

---

[6]It is noted that a few years after *Foster* was decided, the Supreme Court held in *Oregon v. Ice*, 555 U.S. 160 (2009), that consecutive sentencing decisions do not trigger Sixth Amendment *Blakely* concerns.  In light of *Ice,* it appears that the provision in Ohio's pre-*Foster* sentencing statute pertaining to consecutive sentencing determinations would now be found to pass constitutional muster under the Sixth Amendment.  *Cf. Hooks v. Sheets,* 603 F.3d 316, 321 (6th Cir. 2010) (holding that because the petitioner was "*always* subject to consecutive . . . sentences in the discretion of the trial court" in light of *Ice*, his resentencing under *Foster* did not raise ex post facto concerns) (emphasis in original).

of Appeals to deny petitioner's application for reopening of the appeal on the ground that petitioner had not established "a genuine issue as to whether he has a colorable claim of ineffective assistance of appellate counsel" under *Strickland*. (Doc. 14, Ex. 23, p. 3). Therefore, petitioner is not entitled to habeas relief based on the claims alleged in Grounds Five through Seven of the amended petition.

**E. The Double Jeopardy Issue Raised In Ground Four Was Fairly Presented To The State Courts And Is Thus Subject To Review; However, A Question Of State-Law Determinative Of The Federal Constitutional Claim Should Be Certified To The Ohio Supreme Court**

In Ground Four of the petition, petitioner alleges that he was multiply punished for the same offense in violation of the Fifth Amendment's Double Jeopardy Clause when the trial court failed to merge the two weapons-under-disability counts (Counts 2-3) for sentencing purposes in accordance with Ohio's multiple-count statute, Ohio Rev. Code § 2941.25. (Doc. 5, p. 9; *see also* Doc. 23, pp. 60-73). In the return of writ, respondent contends that the double jeopardy issue is barred from review because petitioner failed to fairly present the federal claim to the state courts; respondent further contends that to the extent petitioner argued on direct appeal that the two weapons counts should have been merged for sentencing purposes as allied offenses of similar import under Ohio Rev. Code § 2941.25(A), he raised a claim of error under state-law only, which is not a basis for federal habeas relief. (Doc. 14, Brief, pp. 17-20).

As an initial matter, the undersigned agrees that petitioner is not entitled to relief to the extent he alleges only a claim of error under Ohio law. The federal habeas court has jurisdiction to review a state prisoner's habeas petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States. *See* 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *see also Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("it is

32

not the province of a federal court to reexamine state-court determinations on state-law questions").  However, petitioner has raised a cognizable claim of federal constitutional dimension to the extent he contends that the trial court's failure to merge the two weapons offenses violated the Fifth Amendment's Double Jeopardy Clause.

As discussed below, the undersigned finds that the federal constitutional issue was fairly presented to the state courts and is thus subject to review on the merits herein, and that the claim has merit under current Ohio law.  However, an uncertain question is presented, which is determinative of petitioner's claim on federal habeas review, regarding the state-law standard to apply in determining the Ohio legislature's intent as it pertains to petitioner's convictions and sentences, which became final in 2007.  In the interest of comity, the undersigned recommends that the state-law question be certified to the Ohio Supreme Court to answer before this Court adjudicates the merits of petitioner's double jeopardy claim.

**1. Petitioner's Double Jeopardy Claim Was Fairly Presented To The State Courts**

As respondent has argued in the return of writ, "[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts." *Fulcher v. Motley,* 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million,* 349 F.3d 873, 877 (6th Cir. 2003)); *see also* 28 U.S.C. § 2254(b), (c); *Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971).  A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement.  *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir. 1985).

Moreover, it is well-settled that in order to satisfy the fair presentation requirement, a

habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts. *Fulcher,* 444 F.3d at 798; *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000); *Franklin v. Rose,* 811 F.2d 322, 325 (6th Cir. 1987). This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law. *See, e.g., Franklin v. Rose,* 811 F.2d at 325 (citing *Koontz v. Glossa,* 731 F.2d 365, 368 (6th Cir. 1984)); *see also Prather v. Rees,* 822 F.2d 1418, 1421 (6th Cir. 1987).

A set of four guidelines has been developed for determining whether a claim was presented in such a way as to alert the state courts of the claim's federal nature. *McMeans,* 228 F.3d at 681. Under those guidelines, the fair presentation requirement is satisfied if the petitioner raised the federal issue in the state courts by (1) relying on federal cases employing constitutional analysis; (2) relying on state cases employing constitutional analysis in similar factual contexts; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *Fulcher,* 444 F.3d at 798; *McMeans,* 228 F.3d at 681; *Franklin,* 811 F.2d at 326.

The use of a "generalized catch-all phrase," which merely alleges the denial of a fair trial under the United States Constitution, does not adequately alert the state courts of the constitutional nature of the claim where the "only legal theory presented to the state courts was predicated entirely upon state evidentiary law." *Franklin,* 811 F.2d at 326. "While a petitioner need not cite chapter and verse of constitutional law, general allegations of the denial of rights to a fair trial and due process do not fairly present claims that specific constitutional rights were violated." *Slaughter v. Parker,* 450 F.3d 224, 236 (6th Cir. 2006) (internal citations and

34

quotations omitted).  Generally, a claim is not fairly presented to a state court "if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin v. Reese,* 541 U.S. 27, 32 (2004).

In this case, respondent concedes that petitioner expressly alleged a double jeopardy violation in his memorandum in support of jurisdiction to the Ohio Supreme Court.  (*See* Doc. 14, Brief, p. 19 & Ex. 14, pp. 4, 15).  Respondent argues, however, that petitioner did not satisfy the fair presentation requirement on direct appeal to the Ohio Court of Appeals because he merely claimed, without referring to the Double Jeopardy Clause, that "only one violation of R.C. Section 2923.13" was committed and, therefore, the weapons offenses should have been merged as allied offenses under the standards set forth in Ohio Rev. Code § 2941.25.  (Doc. 14, Ex. 10, pp. 4-5).

The Ohio Supreme Court lacks jurisdiction to consider constitutional issues that were not raised to or considered by the intermediate appellate court.  *See* Ohio Const. art. IV, § 2(B)(2); *State v. Jones,* 211 N.E.2d 198 (Ohio 1965); *see also Rigdon v. Ohio Adult Parole Authority,* No. 1:08cv716, 2010 WL 3910236, at *9 (S.D. Ohio July 7, 2010) (Wehrman, M.J.) (Report & Recommendation) (citing *Leroy,* 757 F.2d at 99; *Fornash v. Marshall,* 686 F.2d 1179, 1185 n.7 (6th Cir. 1982)), *adopted,* 2010 WL 3910230 (S.D. Ohio Oct. 4, 2010) (Dlott, J.); *Harsh v. Warden, Chillicothe Corr. Inst.,* No. 1:08cv433, 2009 WL 3378246, at *1, *9 n.8 (S.D. Ohio Oct. 15, 2009) (Beckwith, J.; Black, M.J.) (and cases cited therein).[7]  However, the undersigned

---

[7]*Cf. Mayes v. Hudson,* No. 1:07cv315, 2010 WL 55963, at *9 & n.1 (N.D. Ohio Jan. 4, 2010) (O'Malley, J.) (noting that "[e]ven if [the] memorandum in support of jurisdiction in the Ohio Supreme Court could be read as having raised the claim . . ., [the petitioner's] failure to raise that claim in the appellate court resulted in its default," because it must be assumed from the Ohio Supreme Court's silence as to the reasons for denying the claim that it did

is not persuaded by respondent's argument because the assignment of error alleged on direct

appeal was sufficient to alert the Ohio Court of Appeals of the underlying federal constitutional

claim.

In an analogous habeas case–*Palmer v. Haviland,* No. C-1-04-28, 2006 WL 1308219, at

*4-5 (S.D. Ohio May 11, 2006) (Weber, J.), *aff'd,* 273 F. App'x 480 (6th Cir. 2008), a judge on

this Court rejected the federal-question argument asserted by respondent as a defense against

petitioner's claim of a double jeopardy violation.  Specifically, in *Palmer*, the petitioner

challenged his multiple punishment for aggravated robbery and robbery in the state courts on the

ground that the offenses, which were "based on the same set of facts and involved a single

victim," were allied offenses of similar import within the meaning of Ohio Rev. Code § 2941.25.

As in this case, the respondent argued that the petitioner failed to fairly present the federal due

process issue to the state courts by limiting his claim "to an alleged state law violation."  *Palmer,*

*supra,* 2006 WL 1308219, at *5.

The *Palmer* court concluded that the petitioner had sufficiently alerted the state courts to

the federal nature of his claim because Ohio's multiple-count statute, as interpreted by the Ohio

Supreme Court in *State v. Rance,* 710 N.E.2d 699 (Ohio 1999),[8] is based on double jeopardy

concerns; the court reasoned in pertinent part:

> *Rance* involved the branch of the Double Jeopardy Clause that protects against
> multiple punishments for the same offense in relation to Ohio's "allied offense"
> statute, Ohio Rev. Code § 2941.25. . . .  The Supreme Court of Ohio addressed the

---

not "ignore its own procedural rules and ... enforced the procedural bar" prohibiting review of claims that are "not raised in the underlying appellate proceeding") (citing *Simpson v. Sparkman,* 94 F.3d 199, 203 (6th Cir. 1996)).

[8]The *Rance* court's interpretation of Ohio's allied offense statute was later clarified by the Ohio Supreme Court in *State v. Cabrales,* 886 N.E.2d 181 (Ohio 2008).  More recently, in *State v. Johnson,* 942 N.E.2d 1061, 1069-70 (Ohio 2010), the Ohio Supreme Court overruled *Rance* to the extent that *Rance* "call[ed] for a comparison of statutory elements solely in the abstract" to determine whether offenses are allied under that statute.

specific issue of whether "R.C. 2941.25(A) and the constitutional protections
against double jeopardy prohibit trial courts from imposing separate sentences for
both involuntary manslaughter and aggravated robbery." . . .  The Ohio Supreme
Court recognized that "double jeopardy protections afforded by the federal and
state Constitutions guard citizens against . . . cumulative punishments for the
'same offense.'". . .  The Ohio Supreme Court noted that "the Fifth Amendment's
Double Jeopardy Clause (made applicable to the states by the Fourteenth
Amendment) and Ohio's counterparts are sufficiently similar to warrant
consultation of federal jurisprudence when analyzing Ohio's proscription against
placing persons 'twice . . . in jeopardy for the same offense.'". . .  The *Rance*
Court went on to analyze United States Supreme Court precedent on double
jeopardy. . . .  The Ohio Supreme Court in *Rance* ultimately determined that the
Ohio legislature could prescribe imposition of cumulative punishments for crimes
stemming from the same criminal act "without violating the federal protections
against double jeopardy or corresponding provisions of a state's constitution."

*Id.* at *6 (case citations omitted).  The Sixth Circuit did not address the waiver issue in affirming

the district court's decision to deny federal habeas relief on the merits of the double jeopardy

claim.  However, tellingly, the Sixth Circuit did refer to the claim that had been raised by the

petitioner in the state courts as "grounded in double-jeopardy concerns."  *Palmer,* 273 F. App'x

at 481.

Most federal courts within this District have followed *Palmer* in rejecting the argument

that a claim challenging multiple sentences imposed in violation of Ohio's multiple-count statute

fails to place the state courts on notice that there is a federal constitutional dimension to the

claim.  *See, e.g., Ashipa v. Knab,* No. 1:08cv879, 2010 WL 5184789, at *7 (S.D. Ohio Dec. 15,

2010) (Barrett, J.); *see also Spence v. Sheets,* 675 F.Supp.2d 792, 824-25 (S.D. Ohio 2009); *Ball

v. Knab,* No. 2:09cv480, 2010 WL 4570226, at *7-8 (S.D. Ohio Oct. 12, 2010), *adopted*, 2010

WL 4570207 (S.D. Ohio Nov. 4, 2010); *Fortner v. Warden, Mansfield Corr. Inst.,* No.

2:09cv977, 2010 WL 1839041, at *3-4 (S.D. Ohio May 5, 2010), *adopted*, 2010 WL 2303280

(S.D. Ohio June 8, 2010); *Church v. Wolfe,* No. 2:06cv764, 2007 WL 2446707, at *1, *5-6 (S.D.

Ohio Aug. 23, 2007).  *But cf. Musselman v. Warden, Chillicothe Corr. Inst.,* No. 3:09cv407, 2010 WL 1995091, at *3-4 (S.D. Ohio May 19, 2010) (Merz, M.J.) (denying a certificate of appealability for a double jeopardy claim that was defaulted because the petitioner relied "on Ohio decisions interpreting the allied import statute" in the state courts); *Dixson v. Warden, Warren Corr. Inst.,* No. 1:08cv540, 2010 WL 60905, at *1, *7-8 (S.D. Ohio Jan. 5, 2010) (Merz, M.J.) (holding the double jeopardy claim, which was argued in the state courts "solely in terms of Ohio Revised Code § 2941.25," was defaulted).[9]

The undersigned is persuaded by the well-reasoned decision in *Palmer* and the cases following *Palmer* that petitioner fairly presented the double jeopardy issue to the state courts on direct appeal.

The Ohio courts have consistently recognized that double jeopardy concerns are implicated when addressing claims that multiple convictions should have been merged under Ohio Rev. Code § 2941.25.  The Ohio Supreme Court has expressly emphasized:  "In Ohio we have . . . attempted to effectuate the principles of the Double Jeopardy Clause of the United States Constitution not only generally by way of Section 10 of Article I of the Ohio Constitution, *but also by way of R.C. 2941.25, the so-called multiple-count statute*."  *State v. Thomas*, 400 N.E.2d 897, 902 (Ohio 1980) (emphasis added), *overruled on other grounds by State v. Crago*, 559 N.E.2d 1353 (Ohio 1990); *see also State v. Johnson,* 942 N.E.2d 1061, 1069 (Ohio 2010) (noting that "there is a constitutional protection underlying the proper application of R.C. 2941.25," which the court defined as "a prophylactic statute that protects a defendant's rights

---

[9]*Musselman* and *Dixson* do not constitute persuasive authority because, in contrast to the *Palmer* line of cases, the court did not consider the fair presentation issue in light of Ohio precedents recognizing that double-jeopardy concerns are inherently involved in determining whether multiple convictions should have been merged under the state statute.

under the Double Jeopardy Clauses of the United States and Ohio Constitutions"); *State v. Whitfield*, 922 N.E.2d 182, 185 (Ohio 2010) (recognizing "[a]t the outset of our analysis" of "the proper manner in which the courts of appeal should remand cases after finding errors committed in sentencing on allied offenses," that Ohio Rev. Code § 2941.25 "incorporates the constitutional protections against double jeopardy"); *State v. Cabrales,* 886 N.E.2d 181, 186-87 & n.2 (Ohio 2008) (noting that if *Rance* were interpreted as requiring that all the elements of the compared offenses must coincide exactly to be considered allied offenses of similar import under Ohio Rev. Code § 2941.25(A), the interpretation would be "incongruous because the state is . . . prohibited from punishing a defendant for identical, duplicate offenses pursuant to the Double Jeopardy Clause").

Moreover, in numerous decisions, the state appellate courts, including the First District Court of Appeals which decided petitioner's appeal, have pointed out that Ohio's allied offense statute is premised on "protect[ing] against multiple punishments for the same criminal conduct in violation of the Double Jeopardy Clauses of the United States and Ohio Constitutions." *See, e.g., State v. Gonzales,* 783 N.E.2d 903, 912 (Ohio Ct. App. 1 Dist. 2002); *State v. Moore,* 675 N.E.2d 13, 16 (Ohio Ct. App. 1 Dist. 1996) (and cases cited therein); *see also State v. Lowery*, No. 2007-T-0085, 2008 WL 1777845, at *2 (Ohio Ct. App. 11 Dist. Apr. 21, 2008); *State v. Polk,* No. 88639, 2007 WL 2443883, at *2 (Ohio Ct. App. 8 Dist. Aug. 30, 2007); *State v. Downing,* No. 22012, 2004 WL 2535422, at *9 (Ohio Ct. App. 9 Dist. Nov. 10, 2004); *State v. Moore,* No. E-03-006, 2004 WL 291145, at *2 (Ohio Ct. App. 6 Dist. Feb. 13, 2004); *State v. Brindley,* No. 01AP-926, 2002 WL 1013033, at *2 (Ohio Ct. App. 10 Dist. May 21, 2002); *State v. Ritchie,* No. 15792, 1997 WL 435698, at *17 (Ohio Ct. App. 2 Dist. July 25, 1997); *cf. Rogers*

*v. Moore,* No. 1:07cv456, 2008 WL 2640664, at *1, *5 (S.D. Ohio July 2, 2008) (Spiegel, J.; Black, M.J.).  As the Ohio Court of Appeals, First Appellate District, once observed in a published decision: "Distilled to its essence, the real concern of any allied-offense analysis is whether the state, by sentencing the defendant for both offenses, is, in effect, imposing multiple punishments for what is essentially one offense."  *State v. Lang*, 656 N.E.2d 1358, 1362 (Ohio Ct. App. 1 Dist. 1995).

Indeed, it appears from the record that the Ohio Court of Appeals was aware of the double jeopardy issue presented in this case.  In dissenting from the majority decision to uphold petitioner's weapons-under-disability convictions, a judge on the appellate court panel stated: "Render had one gun.  Having a gun was illegal for two reasons.  He could not violate one section without violating the other.  That used to be the test before the Ohio Supreme Court decided *State v. Rance*, which is so wrong even that court disregards it sometimes.  But until that court comes to its collective . . . senses, we are stuck with absurd results."  (Doc. 14, Ex. 12, pp. 10-11).  Although the dissenting judge did not explicitly refer to the Double Jeopardy Clause, his opinion stems from concern that petitioner was denied the right guaranteed by that constitutional provision to remain free of multiple punishments for the same offense.

Accordingly, the undersigned concludes that, contrary to respondent's contention in the return of writ, petitioner fairly presented the federal claim alleged in Ground Four to the state courts for consideration.  The double jeopardy issue, therefore, is subject to review on the merits.

**2. Although It Appears Petitioner Was Multiply Punished For The Same Offense Under Ohio's Allied Offense Statute As Interpreted In *Cabrales* And Its Progeny, An Unresolved State-Law Question Is Presented Regarding *Cabrales*' Applicability To This Case, Which Should Be Certified To The Ohio Supreme Court Before Deciding The Issue**

Petitioner's claim challenging the trial court's failure to merge the two weapons offense was adjudicated by the state courts. Therefore, the applicable standard of review for addressing the merits of petitioner's double jeopardy claim is set forth in 28 U.S.C. § 2254(d). As discussed above, under that provision, a writ of habeas corpus may not issue unless the state courts' adjudication of the claim either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

Here, the Ohio Court of Appeals was the only state court to issue a reasoned decision addressing the merits of petitioner's claim. Relying on the Ohio Supreme Court's *Rance* decision, which has since been clarified and overruled (*see supra* p. 36 n.8), the court reasoned as follows in overruling the assignment of error asserted on direct appeal:

> Render's final argument is that the two weapon-under-disability counts should have been merged for sentencing. He argues that the offenses "were based on two different past convictions, not two different acts." While we agree with that assertion, that does not control the analysis.

> In *State v. Rance*, the Ohio Supreme Court determined that if the elements of two crimes "correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import." If they do not, "the offenses are of dissimilar import and the court's inquiry ends–the multiple convictions are permitted." To decide whether two charges

41

involve allied offenses under *Rance,* the offenses must be compared in the abstract.

While we have found no decision that has addressed two weapon-under-disability charges, our recent opinions involving felonious assault are instructive. In *State v. Reid,* [No. C-050465, 2006 WL 3524423 (Ohio Ct. App. 1 Dist. Dec. 8, 2006),] the defendant shot one victim and was charged with two counts of felonious assault–one under R.C. 2903.11(A)(1) for serious physical harm and one under R.C. 2903.11(A)(2) for use of a deadly weapon. We held that "the elements of [the] offenses do not correspond so that the commission of one will result in the commission of the other." In so holding, we specifically rejected the argument that the offenses should merge[] because they stemmed from a single act.

In *Reid*, the defendant committed one act that violated two different sections of the same statute. In this case, Render had one gun, the possession of which violated two different sections of the same statute. Render was charged with two counts of having a weapon while under a disability: one under R.C. 2923.13(A)(2) because of prior convictions for the felonies of violence of robbery in 2000, escape in 1989, and witness intimidation in 1989; and one under R.C. 2923.13(A)(3) because of a prior drug conviction, specifically, drug abuse in 1992.

In the abstract, one can possess a weapon while having a prior conviction for a felony of violence without also having a prior conviction for a drug offense. In fact, Render had three convictions for violent felonies. Had he been charged separately for each of them, the outcome might have been different. As he was actually charged, however, the two counts did not involve allied offenses, and Render was properly convicted of both.

(Doc. 14, Ex. 12, pp. 8-9) (footnote citations omitted).

The constitutional issue raised in this case involves the Fifth Amendment's Double Jeopardy Clause, which was made applicable to the states through the Fourteenth Amendment, *Benton v. Maryland,* 395 U.S. 784, 794 (1969), and among other things, protects against "multiple punishments for the same offense" imposed in a single proceeding. *Missouri v. Hunter,* 459 U.S. 359, 366 (1983) (quoting *North Carolina v. Pearce,* 395 U.S. 711, 717 (1969)).

In the "multiple punishment" context, the protection is limited to ensuring that "sentencing courts do not exceed, by the device of multiple punishments, the limits prescribed by

42

the legislative branch of government, in which lies the substantive power to define crimes and

prescribe punishments." *Jones v. Thomas,* 491 U.S. 376, 381 (1989); *see also Ohio v. Johnson,*

467 U.S. 493, 499 (1984); *Brown v. Ohio,* 432 U.S. 161, 165 (1977).  Therefore, "the question

under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of

legislative intent." *Johnson,* 467 U.S. at 499; *see also Palmer,* 273 F. App'x at 484 (unlike other

double jeopardy protections prohibiting re-prosecution for the same offense, "the multiple

punishments category of double jeopardy is primarily one of legislative intent").

     In the federal courts, the test established in *Blockburger v. United States,* 284 U.S. 299,

304 (1932), is normally used to determine whether two offenses are sufficiently different to

allow the imposition of cumulative punishment.  *Johnson,* 467 U.S. at 499 n.8; *see also Brown,*

432 U.S. at 166.  However, the *Blockburger* test, a rule of statutory construction for federal

statutes, does not necessarily control the inquiry into the intent of a state legislature.  *Johnson,*

467 U.S. at 499 n.8; *Banner v. Davis,* 886 F.2d 777, 780-82 (6th Cir. 1989).

     Instead, when assessing the intent of a state legislature, the federal courts must defer to

and are bound by the state courts' construction of their own statutes.  *Hunter,* 459 U.S. at 368

(citing *O'Brien v. Skinner,* 414 U.S. 524, 531 (1974)); *see also Johnson,* 467 U.S. at 499; *Brown,*

432 U.S. at 167; *Banner,* 886 F.2d at 780; *Palmer,* 273 F. App'x at 486 (on federal habeas

review, "[w]e cannot independently apply typical rules of statutory construction, including the

*Blockburger* test, to a state statute and conclude that the state courts were wrong in their reading

of legislative intent").  A state legislature may create substantive crimes and punishments that

overlap to some degree without violating the Double Jeopardy Clause.  Therefore, "[e]ven if the

crimes are the same under *Blockburger,* if it is evident that a state legislature intended to

43

authorize cumulative punishments [for them, the federal] court's inquiry is at an end." *Johnson,* 467 U.S. at 499 n.8.

In Ohio, the legislature's intent in the multiple punishment area may be discerned from Ohio Rev. Code § 2941.25.  *See Rance,* 710 N.E.2d at 702-03; *see also Johnson,* 942 N.E.2d at 1064-65; *Whitfield*, 922 N.E.2d at 185.  The statute provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

Ohio Rev. Code § 2941.25.

The Ohio Supreme Court has held that this provision permits the trial court to convict and impose cumulative sentences for two or more offenses arising from the same incident only if the offenses (1) are of dissimilar import; or (2) are of similar import, but were committed separately or with separate animus.  *Rance,* 710 N.E.2d at 703; *see also Cabrales,* 886 N.E.2d at 184.  The applicable test for deciding the issue potentially involves a two-step inquiry under the state statute.  *Johnson*, 942 N.E.2d at 1065-66, 1071; *State v. Brown,* 895 N.E.2d 149, 153-54 (Ohio 2008), *cert. denied*, 129 S.Ct. 1356 (2009); *Cabrales,* 886 N.E.2d at 184 (and cases cited therein).  Under the first step of the inquiry, the court must determine whether the various offenses are of similar or dissimilar import; if the offenses are found to be of dissimilar import, the multiple convictions and punishments are permitted and the court's inquiry ends.  *See Rance,* 710 N.E.2d at 703; *see also Johnson,* 942 N.E.2d at 1066; *Brown,* 895 N.E.2d at 154; *Cabrales,*

44

886 N.E.2d at 184.  On the other hand, if the offenses are found to be of similar import, the second level of inquiry is triggered requiring the court to determine whether or not the defendant may be cumulatively punished for them because, as a factual matter, they were committed separately or with a separate animus.  *See Rance,* 710 N.E.2d at 703; *see also State v. Jones,* 676 N.E.2d 80, 81-82 (Ohio 1997).

In this case, no issue has been raised that the two weapons-under-disability offenses charged against petitioner were committed separately or with a separate animus under the second step of the inquiry required by Ohio Rev. Code § 2941.25.  Indeed, the Ohio Court of Appeals essentially agreed with petitioner to the extent that he claimed the offenses did not involve "two different acts," but rather stemmed from "one act."  (*See* Doc. 14, Ex. 12, pp. 9-10).  Therefore, the resolution of petitioner's double jeopardy claim turns on the propriety of the state court's adjudication of the issue under the first step of the inquiry in determining the Ohio legislature's intent in the multiple punishment area.

The test to apply in resolving whether offenses are of similar or dissimilar import under the first step of the state-law inquiry has evolved over time.  When petitioner was convicted and sentenced in April 2006, the test adopted by the Ohio Supreme Court in *Rance* applied, which required the state courts to compare the statutory elements of the various crimes "in the abstract," without regard to the particular facts of the case, in determining whether the offenses were of similar or dissimilar import.  *Rance,* 710 N.E.2d at 703; *see also Johnson,* 942 N.E.2d at 1066; *Brown,* 895 N.E.2d at 154; *Cabrales,* 886 N.E.2d at 184.  Under the *Rance* "abstract elements-comparison test," multiple offenses were deemed to be dissimilar if they failed to "correspond to such a degree that the commission of one crime will result in the commission of the other."

*Rance,* 710 N.E.2d at 703 (quoting *Jones,* 676 N.E.2d at 81, in turn quoting *State v. Blankenship,*

526 N.E.2d 816, 817 (Ohio 1988)).[10]

On April 9, 2008, the Ohio Supreme Court issued a decision clarifying the *Rance* test to

resolve a conflict that had arisen among the intermediate appellate courts in applying the test.  *See*

*Cabrales,* 886 N.E.2d at 184-88.  In *Cabrales*, the state supreme court emphasized at the outset

that some courts, including the First District Court of Appeals, had produced "inconsistent,

unreasonable, and, at times, absurd results" in their interpretation and application of the *Rance*

abstract elements-comparison test.  *Id.* at 185-86.  The state supreme court stated that those

intermediate appellate courts had misinterpreted the *Rance* test as requiring a "strict textual

comparison" of the elements.  *See id.* at 185-87 (overruling *State v. Palmer,* 772 N.E.2d 726, 728

(Ohio Ct. App. 1 Dist. 2002)).  In rejecting such an interpretation of *Rance* as "overly narrow,"

the *Cabrales* court reasoned in pertinent part:

> [N]owhere does *Rance* mandate that the elements of compared offenses must
> exactly align for the offenses to be allied offenses of similar import under R.C.
> 2941.25(A).  To interpret *Rance* as requiring a strict textual comparison would
> mean that only where *all* the elements of the compared offenses coincide *exactly*
> will the offenses be considered allied offenses of similar import under R.C.
> 2941.25(A).  Other than identical offenses, we cannot envision any two offenses
> whose elements align *exactly*.

*Id.* at 186-87 (emphasis in original).

---

[10]As noted above, *see supra* p. 36 n.8, the Ohio Supreme Court recently overruled the holding in *Rance* "call[ing] for a comparison of statutory elements solely in the abstract."  *Johnson,* 942 N.E.2d at 1069.  Now, "[w]hen determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered."  *Id.*  Under the new test adopted in *Johnson,* "the court need not perform any hypothetical or abstract comparison of the offenses at issue;" instead, the question in determining whether offenses are of similar or dissimilar import "is whether it is possible to commit one offense *and* commit the other with the same conduct, not whether it is possible to commit one *without* committing the other."  *Id.* at 1070.  "If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import."  *Id.  Johnson*, which was decided in December 2010, applies only prospectively and thus does not govern the resolution of the double-jeopardy issue raised in the case-at-hand.

The *Cabrales* court further noted that "[s]uch an interpretation is incongruous because the state is already prohibited from punishing a defendant for identical, duplicate offenses pursuant to the Double Jeopardy Clause."  *Id.* at 187 n.2.  Emphasizing that the "basic thrust of [Ohio Rev. Code § 2941.25(A)] is to prevent 'shotgun' convictions," the court concluded:

> It is clear that interpreting *Rance* to require a strict textual comparison under R.C. 2941.25(A) conflicts with legislative intent and causes inconsistent and absurd results.  Accordingly, we clarify that in determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), *Rance* requires courts to compare the elements of offenses in the abstract, i.e., without considering the evidence in the case, but does not require an exact alignment of elements.

*Id.* at 187-88.

After *Cabrales* was decided, the Ohio Supreme Court "was again called upon to revisit our 1999 decision in [*Rance*] and to clarify whether pursuant to its holding and R.C. 2941.25, a defendant may be convicted and sentenced for two separate crimes arising out of two forms of the same offense based on a single criminal act."  *See Brown,* 895 N.E.2d at 150.  In *Brown*, which was decided in September 2008, the Ohio Supreme Court held that the defendant's convictions on two alternate theories of aggravated assault should have been merged as allied offenses of similar import because the Ohio legislature "did not intend [the two means of committing the same offense] to be separately punishable when the offenses result from a single act undertaken with a single animus."  *Id.* at 150-51.

In reaching its decision, the court found that the two forms of aggravated assault did not satisfy the *Rance* test as clarified in *Cabrales* "because, comparing the elements of the offenses in the abstract, the commission of one will not necessarily result in the commission of the other." *Id.* at 155.  However, the court went on to point out that the two-tiered test for allied offenses was "designed to determine legislative intent," and that "[w]hile [the] test ... is helpful in construing

legislative intent, it is not necessary to resort to that test when the legislature's intent is clear from the language of the statute." *Id.* at 155-56. The court concluded that the Ohio legislature had "plainly and unambiguously conveyed its legislative intent" regarding separate convictions on alternate theories of aggravated assault; the court reasoned in relevant part as follows:

> R.C. 2903.12 defines the offense of aggravated assault. Division (A) of that section sets forth the distinguishing factor of provocation and the requisite mens rea for the offense: knowingly. Then subdivisions (1) and (2) set forth two means of committing the offense–causing serious physical harm to another, or causing or attempting to cause physical harm by means of a deadly weapon or dangerous ordnance. These subdivisions set forth two different forms of the same offense, in each of which the legislature manifested its intent to serve the same interest–preventing physical harm to persons. . . .
>
> In light of this statutory language, we conclude that the General Assembly did not intend violations of R.C. 2903.11(A)(1) and (A)(2) to be separately punishable when the offenses result from a single act undertaken with a single animus. Thus, aggravated assault in violation of R.C. 2903.12(A)(1) and (A)(2) are allied offenses of similar import.

*Id.* at 156.

Thereafter, on December 9, 2008, the Ohio Supreme Court reversed the judgment of the Ohio Court of Appeals, First Appellate District, "on the authority of . . . *Brown*," in a case where the appellate court erroneously concluded, as it had in *Reid*, *supra,* 2006 WL 3524423, at * 4, that "two counts of felonious assault in violation R.C. 2903.11(A)(1) and (2) were . . . not . . . allied offenses of similar import under R.C. 2941.25(A)." *State v. Cotton,* 898 N.E.2d 959 (Ohio 2008). Subsequently, in *State v. Harris,* 911 N.E.2d 882, 886 (Ohio 2009), the Ohio Supreme Court reaffirmed, "[o]n the authority of *Cotton*," that "convictions for felonious assault defined in R.C. 2903.11(A)(1) and felonious assault defined in R.C. 2903.11(A)(2) are allied offenses of similar import, and therefore a defendant cannot be convicted of both offenses when both are committed with the same animus against the same victim."

48

This case is analogous to *Brown*, *Cotton*, and *Harris* to the extent that petitioner also was convicted and sentenced on two alternate theories of having, carrying or using a firearm while under disability–(1) as a person "under indictment for or . . . convicted of any felony offense of violence," as set forth in Ohio Rev. Code § 2923.13(A)(2) (Count 2); and (2) as a person "under indictment for or . . . convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse," as set forth in Ohio Rev. Code § 2923.13(A)(3) (Count 3).  (*See* Doc. 14, Ex. 2 & Ex. 12, p. 10).[11]  Indeed, in ruling on petitioner's claim on direct appeal, the Ohio Court of Appeals acknowledged as much when it analogized the instant case to *Reid,* where the defendant "committed one act [of felonious assault] that violated two different sections of the same statute."  (*See* Doc. 14, Ex. 12, pp. 9-10).  Therefore, as in *Brown*, *Cotton* and *Harris*, the disposition of petitioner's claim for relief involves a determination of a state-law issue as to whether the Ohio legislature intended multiple punishments for having a weapon under disability based on alternative theories for establishing guilt.

The undersigned is not persuaded by the Ohio Court of Appeals' determination of the state-law issue in the instant case because, under the Ohio Supreme Court's decisions rendered after the direct review proceedings concluded, it is clear that the appellate court wrongly decided the issue and that the trial court's failure to merge the two weapons offenses violated petitioner's rights under the Double Jeopardy Clause.  As the dissenting appellate judge pointed out, and as the Ohio Supreme Court subsequently made clear in *Cabrales*, the "strict textual comparison" test that the intermediate appellate court used to determine whether the two offenses were of similar

---

[11]Count Two was based on petitioner's prior convictions on December 18, 2000, in Butler County, for robbery, and on December 11, 1989, in Hamilton County, for escape and intimidation of a witness; Count Three was based on petitioner's conviction in Hamilton County on December 18, 1992 for drug abuse.  (Doc. 14, Ex. 2).

import and thus subject to merger under the allied offense statute was improper, producing an "absurd result" which triggered double jeopardy concerns. *See Cabrales*, 886 N.E.2d at 184-87. Moreover, in light of the Ohio Supreme Court's decisions in *Brown*, *Cotton* and *Harris*, the undersigned is convinced that the Ohio legislature did not intend to authorize multiple punishments for the two offenses, involving two alternate means of committing the same offense. *Cf. Brown,* 895 N.E.2d at 150-51, 156; *see also Harris,* 911 N.E.2d at 886; *Cotton*, 898 N.E.2d at 959. Therefore, if *Cabrales* and its progeny are applicable to the case-at-hand, the Ohio Court of Appeals' adjudication of the issue resulted in a decision that was contrary to, or involved an unreasonable application of, clearly-established controlling Supreme Court precedents pertaining to double jeopardy, "multiple punishment" claims, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d).

The fact that petitioner received concurrent sentences does not change the undersigned's opinion that petitioner's rights under the Double Jeopardy Clause were infringed in this case, because petitioner's separate convictions on the two counts still remain on his criminal record. *See, e.g.*, *Davis v. Ohio Adult Parole Authority,* 512 F.Supp. 533, 538 (S.D. Ohio 1981) ("While concurrent sentences were granted here, the stigma associated with a criminal conviction is equivalent to punishment, . . . and therefore if we find that the two crimes merged, [the petitioner's] convictions are inconsistent with double jeopardy principles.") (citing *Benton v. Maryland,* 395 U.S. 784 (1969)); *see also State v. Moore,* No. C-070421, 2008 WL 3544342, at *1 (Ohio Ct. App. 1 Dist. Aug. 15, 2008) (holding that it was "prejudicial plain error" to impose concurrent sentences for allied offenses of similar import because the defendant's criminal record

50

would still "reflect two convictions when he had committed only one criminal act"), *appeal dismissed,* 900 N.E.2d 200 (Ohio 2009); *cf. Rutledge v. United States,* 517 U.S. 292, 301-02 (1996) (quoting *Ball v. United States,* 470 U.S. 856, 864-65 (1985)) ("the second conviction, even if it results in no greater sentence, is an impermissible punishment" because it "has potential adverse consequences that may not be ignored").

Nevertheless, the undersigned is concerned because petitioner's direct appeal had concluded *before* the Ohio Supreme Court issued its clarifying decisions in *Cabrales*, *Brown*, *Cotton* and *Harris*.  Under Ohio law, "newly declared constitutional rules in criminal cases are applied prospectively, not restrospectively," and thus "only to cases that are pending on the announcement date."  *State v. Colon,* 893 N.E.2d 169, 170 (Ohio 2008), *overruled on other grounds by State v. Horner,* 935 N.E.2d 26 (Ohio 2010).  Therefore, a question is raised as to whether *Cabrales* and the subsequent state supreme court decisions are applicable in determining the state legislature's intent and the reasonableness of the Ohio courts' adjudication of petitioner's claim.  *Cf. Beard v. Banks,* 542 U.S. 406, 411 (2004) (quoting *Caspari v. Bohlen,* 510 U.S. 383, 390 (1994)) ("State convictions are final 'for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for writ of certiorari has elapsed or a timely petition has been finally denied.'"); *Allen v. Moore,* No.1:05cv731, 2007 WL 651248, at *4 n.1. (S.D. Ohio Feb. 23, 2007) (Barrett, J.) (same).[12]

It is unclear whether the *Cabrales* court announced a new rule to be applied only

_____

[12]*Cf. Jimenez v. Quarterman,* 555 U.S. 113, 129 S.Ct. 681, 685-86 (2009) (for federal habeas statute of limitations purposes, a state conviction is not final until the process of direct review, which includes certiorari review by the United States Supreme Court, "comes to an end").

prospectively, or merely clarified existing law established in *Rance* in resolving a conflict that had developed among the intermediate state courts in the wake of *Rance* for discerning the legislature's intent in analogous factual contexts. The parties have not cited, nor could the undersigned find, any case definitively answering that question or, for that matter, how the state's highest court would have decided the underlying federal constitutional issue if it had granted petitioner leave to appeal in this case. But, it is noted that the Ohio Court of Appeals, First Appellate District, did grant a defendant's application filed in August 2009 for reconsideration of a December 2007 decision overruling an assignment of error challenging convictions for attempted murder and two counts of felonious assault relating to the shooting of a single victim in rapid succession. *State v. Gandy,* No. C-070152, 2010 WL 2543911 (Ohio Ct. App. 1 Dist. June 25, 2010) (per curiam), *appeal dismissed*, 935 N.E.2d 46 (Ohio 2010). The court stated: "We have granted [the] application for reconsideration because the [state] supreme court's decisions in *Cabrales*, *Harris*, and [another case pertaining to the attempted murder count] make apparent our error in overruling Gandy's . . . assignment of error." *Id.* at *2. The court vacated the sentences imposed for attempted murder and both felonious assault counts, reasoning that "because the shooting involved Gandy's discharge of three bullets into a single victim in rapid succession, the offenses cannot be said to have been committed separately or with a separate animus as to each." *Id.* at *2-3.

It is well-settled that the federal habeas court normally is bound by the state court's interpretation of state law that was "announced on direct appeal of the challenged conviction." *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005) (citing *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991), and *Mullaney v. Wilbur,* 421 U.S. 684, 691(1975)). However, by the same token, the

highest court of the state is the final arbiter of the state-law issue; therefore, "[w]hen it has spoken, its pronouncement is to be accepted by federal courts as defining state law." *West v. American Telephone & Telegraph Co.,* 311 U.S. 223, 236 (1940); *see also Hicks v. Feiock,* 485 U.S. 624, 629-30 & n. 3 (1988) (applying *West* standard in federal habeas case). "Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *West,* 311 U.S. at 237 (and cases cited therein); *see also Hampton v. United States,* 191 F.3d 695, 701 (6th Cir. 1999) (citing *Hicks,* 485 U.S. at 630 n.3); *cf. Lawler v. Fireman's Fund Ins. Co.,* 322 F.3d 900, 903 (6th Cir. 2003).

In the present case, at the time of petitioner's conviction and appeal, the intermediate appellate courts had reached conflicting and often confusing, illogical results in interpreting and applying the *Rance* standard. *See Cabrales,* 886 N.E.2d at 184-86. The Ohio Supreme Court denied petitioner leave to appeal and summarily dismissed the appeal without addressing the issues that had arisen in the wake of *Rance.* As the Ohio Supreme Court pointed out in *Cabrales*, "even after *Rance*, [it had] recognized that certain offenses are allied offenses of similar import even though their elements do not align exactly." *Id.* at 187 (and Ohio Supreme Court cases cited therein). Nevertheless, only after petitioner's conviction became final by the conclusion of direct review did the state's highest court definitively decide the issue in petitioner's favor in *Cabrales* and thereafter in *Brown, Cotton* and *Harris.*

The parties have not cited, nor could the undersigned find, any Supreme Court or Sixth Circuit case that is helpful in resolving the difficult double jeopardy issue posed by the unusual

circumstances of this case.  A Report and Recommendation is currently pending before The

Honorable Michael R. Barrett of this Court, in a case involving the same difficult issue, wherein

the magistrate judge recommended that the state-law question regarding the applicability of

*Cabrales* in resolving the double jeopardy issue be certified to the Ohio Supreme Court.  *See*

*Tony Gaines v. Warden, Lebanon Corr. Inst.,* No. 1:07cv347 (Barrett, J.; Litkovitz, M.J.) (Doc.

34).  As in *Gaines*, the undersigned similarly is persuaded by a Tenth Circuit decision–*Burleson*

*v. Saffle*, 278 F.3d 1136 (10th Cir. 2002)–that certification of the state-law issue to the Ohio

Supreme Court is warranted here.

In *Burleson*, 278 F.3d at 1143-44, the federal habeas court was similarly faced with a

double jeopardy issue that was "inextricably intertwined with the proper construction of [a state]

statute."  In that case, the question whether the state legislature intended to prescribe multiple

punishments for the petitioner's offenses was difficult to assess, because although the state

appellate court had summarily affirmed the petitioner's convictions, "the only authoritative

construction" of the relevant statute was found in a subsequent state supreme court decision

issued *after* the petitioner's conviction became final, which supported the petitioner's claim that

he was improperly subjected to multiple punishments for one offense.  *See id.* at 1139, 1143-44.

In addressing the issue posed in that case, the Tenth Circuit recognized that under the

deferential standards of review established for consideration of 28 U.S.C. § 2254 petitions, "our

task is ordinarily straightforward enough, even where resolution of a federal question depends

upon the resolution of a predicate state-law question:  We defer absolutely to the state court's

disposition of the state-law question and proceed to review the court's application of federal law

to ascertain whether or not it was reasonable." *Id.* at 1144 (citing *Schad v. Arizona,* 501 U.S. 624,

636 (1991) (Souter, J., concurring); *Johnsonv v. Fankell,* 520 U.S. 911, 916 (1997); and

*Robinson v. California*, 370 U.S. 660, 666 (1962)).  The circuit court also emphasized that "we

will normally defer to a state court's result even when it is unaccompanied by supporting

reasoning."  *Id.* (citing *Aycox v. Lytle,* 196 F.3d 1174, 1177 (10th Cir. 1999)).  On the other hand,

the court was troubled by the "unusual confluence of circumstances attending the present case,"

which made "impossible an easy resolution of the federal constitutional question presented to us."

*Id.*

The court concluded that "the proper course of action in the present case is to certify the

predicate state-law question" to the state supreme court "and stay the proceedings until we

receive an answer."  *Id.* at 1145 (citing *Stewart v. Smith,* 534 U.S. 157 (2001) (*per curiam*)).  In

so concluding, the court reasoned in relevant part:

> Here the defendant's constitutional rights are intertwined with the construction of a
> state statute, the state court was silent as to the statute's proper construction, its
> criminal courts have never previously interpreted the statute, and its highest
> criminal court has subsequently construed the statute in a manner that implicates
> the defendant's constitutional rights.  In this situation, it would be improper for us
> as a federal reviewing court to divine which construction the state court chose to
> give its own statute from amongst a universe of more or less plausible possibilities.
> In the interest of comity, we will not lightly presume that the state court resolved a
> statutory question in a manner that would lead to a constitutional violation. . . .

*Id.* at 1144.

The instant case differs from *Burleson* to the extent that the state appellate court was not

silent, but in conflict with other intermediate appellate courts, was generally misinterpreting

*Rance*'s abstract elements-comparison test to require a strict textual comparison of the elements.

Nevertheless, the undersigned is persuaded that the course of action taken in *Burleson* is

appropriate in this case given the conflict among the Ohio intermediate appellate courts in

applying the then-applicable *Rance* standard of review; the absence of controlling state court supreme court precedents at that time addressing the predicate state-law question in analogous factual contexts; and the subsequent state supreme court decisions clarifying *Rance* and construing Ohio Rev. Code § 2941.25 in a manner that implicates petitioner's constitutional rights.

Accordingly, in the interest of comity, the undersigned recommends that the following question(s) should be certified to the Ohio Supreme Court in accordance with the procedure set forth in Rule XVIII of the Rules of Practice of the Supreme Court of Ohio, because they involve a "question of Ohio law determinative of the proceeding and for which there is no controlling precedent in the decisions" of that court, *see* Rule XVIII, § 1, of the Rules of Practice of the Supreme Court of Ohio:

> Whether, in this case, Ohio Rev. Code § 2941.25, as interpreted by the Ohio Supreme Court in *Rance,* could be reasonably construed at the time petitioner's conviction became final in 2007 as permitting a "strict textual comparison" of the elements and a finding, in accordance with the First District Court of Appeals' majority decision, that the two weapons-under-disability charges brought against petitioner under Ohio Rev. Code §§ 2923.13(A)(2) and 2923.13(A)(3) are of dissimilar import and thus not subject to merger under the allied offense statute; or whether, conversely, at the time petitioner's conviction became final in 2007, the proper construction of Ohio Rev. Code § 2941.25 required a finding that the two offenses are of similar import in accordance with the subsequent clarification in *Cabrales* of the *Rance* "abstract elements comparison test," as well as the Ohio Supreme Court's ensuing decisions in *Brown, Cotton* and *Harris*.

Petitioner, as the party requesting federal habeas corpus relief in this case, should be designated as the moving party. Moreover, nothing in the certification, including the particular phrasing of the foregoing questions, should be deemed as limiting the Ohio Supreme Court in its consideration of the state-law questions presented.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Petitioner's petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254, as amended (Docs. 5, 18), be **DENIED** with prejudice, except to the extent that the double jeopardy claim alleged in Ground Four of the petition (Doc. 5) should be **STAYED** pending the Ohio Supreme Court's consideration of the following state-law question(s), which the undersigned **RECOMMENDS** should be **CERTIFIED** to the state supreme court to answer in accordance with Rule XVIII of the Rules of Practice of the Supreme Court of Ohio:

> Whether, in this case, Ohio Rev. Code § 2941.25, as interpreted by the Ohio Supreme Court in *Rance,* could be reasonably construed at the time petitioner's conviction became final in 2007 as permitting a "strict textual comparison" of the elements and a finding, in accordance with the First District Court of Appeals' majority decision, that the two weapons-under-disability charges brought against petitioner under Ohio Rev. Code §§ 2923.13(A)(2) and 2923.13(A)(3) are of dissimilar import and thus not subject to merger under the allied offense statute; or whether, conversely, at the time petitioner's conviction became final in 2007, the proper construction of Ohio Rev. Code § 2941.25 required a finding that the two offenses are of similar import in accordance with the subsequent clarification in *Cabrales* of the *Rance* "abstract elements comparison test," as well as the Ohio Supreme Court's ensuing decisions in *Brown, Cotton* and *Harris*.

2. A certificate of appealability should not issue with respect to the claims alleged in Grounds One through Three of the petition and Grounds Five through Seven of the amended petition, in the absence of a substantial showing that petitioner has stated a "viable claim of the denial of a constitutional right" or that the issues presented are "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel,* 529 U.S. 473, 475 (2000) (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting

this Report and Recommendation to deny all claims for relief, except Ground Four, with prejudice would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* with respect to those claims upon any showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

<u>*s/Stephanie K. Bowman*</u>
Stephanie K. Bowman
United States Magistrate Judge

58

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

DAVID RENDER,                                   Civil Action No. 1:10-cv-629
      Petitioner

      vs                                    Spiegel, J.
                                                     Bowman, M.J.

WARDEN, SOUTHERN OHIO
CORRECTIONAL FACILITY,
      Respondent

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).